**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 3, BLOOMINGDALE, DISTRICT 65, RETAIL, WHOLESALE & DEPARTMENT STORE UNION, CIO, Respondent.**

No. 42, Docket 22977.

United States Court of Appeals Second Circuit.

Argued Oct. 6, 1954.

Decided Nov. 1, 1954.

---

1. See People of Sioux County, Neb., v. National Surety Co., 1928, 276 U.S. 238, 241–44, 48 S.Ct. 239, 72 L.Ed. 547.

286

Elizabeth Head, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Bernard Dunau, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Irving Rozen, New York City (Weisman, Allan, Spett & Sheinberg and Milton C. Weisman, New York City, on the brief), for respondent.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

CLARK, Chief Judge.

The National Labor Relations Board asks enforcement of its order issued against Local 3, Bloomingdale, District 65, Retail, Wholesale & Department Store Union, CIO, for violation of § 8 (b) (1) and (2) of the Labor Management Relations Act, 29 U.S.C. § 158 (b) (1) and (2), in the discharge of

William P. Ward. Under the terms of a maintenance-of-membership clause in its collective bargaining agreement with the employer, Bloomingdale Bros., Inc., the union had the right to demand the discharge of any employee who failed to pay his membership dues. The present proceeding arises because it had made such a demand with respect to Ward, and the employer had complied by discharging him. The Board, one member dissenting, overruled the contrary findings of the Trial Examiner to find that Ward had been discharged not for nonpayment of dues, but for nonpayment of fines. Hence it concluded that the discharge was wrongful, although it absolved the employer from complicity. 107 NLRB No. 62. The Board's order, for which it here seeks enforcement, requires the respondent union to acquiesce in the reinstatement of Ward and to compensate Ward for lost pay.

■■ Respondent resists the Board's interpretation of the union's activities and asks us to deny enforcement of the Board's order. It does not here, nor did it before the Board, argue that it had the right to demand discharge for nonpayment of fines. The Labor Management Relations Act preserves the union's right to maintain its own disciplinary rules, § 8(b) (1) (A), 29 U.S.C. § 158 (b) (1) (A), but limits the sanction of discharge to failure to tender periodic dues and initiation fees. § 8(b) (2), 29 U.S.C. § 158(b) (2). Both the Board and the courts have consistently held that "periodic dues" do not include fines. See, e. g., N. L. R. B. v. International Ass'n of Machinists, Local No. 504, 9 Cir., 203 F.2d 173; Electric Auto-Lite Co., 92 N LRB 1073, affirmed per curiam N. L. R. B. v. Electric Auto-Lite Co., 6 Cir., 196 F.2d 500, certiorari denied Electric Auto-Lite Co. v. N. L. R. B., 344 U.S. 823, 73 S.Ct. 23, 97 L.Ed. 641. Respondent contends, however, that Ward's discharge was based solely on his refusal to tender the prerequisite dues.

The facts leading up to the filing of the unfair labor practice complaint were the culmination of a long-standing feud between Ward and the union. Ward joined the union only reluctantly at the last moment of a grace period. Thereafter he was recurrently delinquent in his payment of dues. In the summer of 1951 he was fined by the union for his unexcused absence from compulsory union meetings. In accordance with a well publicized, though sporadically enforced, union policy, Ward was notified that the union would accept no further payment of dues until the outstanding fines were settled. Although the union accepted a tender of dues by mail in August, 1951, it repudiated three personal tenders in October and November, 1951, and January, 1952. Six months later, in June, 1952, after persistent union demands for Ward's separation, Ward was called into the office of Vincent Brennan, the employer's personnel manager. Brennan strongly urged Ward to make another tender, informing him that the union had agreed to accept his dues without payment of fines. Ward's attitude throughout this conference was one of obdurate recalcitrance. He refused to make the necessary tender and was discharged the next day. In signing his final pay check Ward noted on it that he was being discharged for nonpayment of union dues.

A variety of conclusions has been drawn from this set of circumstances. The Trial Examiner found that Ward had demonstrated by his statements and conduct that "he had no intention of tendering dues to bring his membership in the Union into good standing and that he mistakenly relied upon the Union's past conduct and his belief that by the institution of these proceedings he could retain his employment." The Board, on the other hand, considered Brennan's remarks to Ward insufficient to dispel reasonable doubts of the utility of tendering dues without the payment of fines. "In the absence of specific notice from the Union to Ward that his dues would be accepted without regard to fines, we are persuaded on the facts in this case that another tender by Ward would have been a futile gesture." Member Murdock dissented from the majority of the Board,

arguing that if it was reasonable, as the Board had found, for the Company to rely on the union's assurance that it sought only dues from Ward, it was equally incumbent upon Ward to accept this assurance.

The Board's departure from the ruling of the Trial Examiner discloses disagreement, in part at least, on both fact and law. Upon judicial review of decisions of the Board, the courts are admonished to take special cognizance of dissimilar findings of the Trial Examiner when they are related to matters of evidence. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Chautauqua Hardware Corp., 2 Cir., 192 F.2d 492; N. L. R. B. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135, 7 Cir., 212 F.2d 216; Boeing Airplane Co. v. N. L. R. B., 9 Cir., 217 F. 2d 369. The Trial Examiner in this case may well have been influenced by the demeanor of the witnesses in appraising the sincerity of the union's change of position and the intransigeance of Ward's anti-union attitude. When the Board concluded, on the same facts, that another tender "would have been futile," it would appear to have been encroaching on the field of the Trial Examiner's special competence. The Board's holding, however, can also be interpreted as requiring, as a prerequisite of law, that notice of change of union policy must be directly communicated to all parties involved in order to be binding upon them. It is to this proposition of law that we now turn.

The Board's position that lawfulness of discharge turns on the manner in which union policies are communicated to employees, rather than their substance, is an unduly legalistic implementation of the broad policies of the Labor Management Relations Act. The proviso of § 8(b) (1) (A) of that act, 29 U.S.C. § 158(b) (1) (A), is a clear indication that Congress did not intend the Board's policing of union unfair labor practices to encompass general supervision of intra-union administration. The union was free at any time to adapt its policies to the legal requirements of the maintenance-of-membership clause of its contract. We agree with the Trial Examiner that the change in policy was effectively imparted to Ward.[1] Even if Ward's conference with Brennan was not sufficient to convince him that his dues would now be accepted, it at least should have led him to make some inquiries. Ward had the choice of testing the union's sincerity by a tender or of taking the major risk of discharge; a reasonable man could hardly fail to try the former before blithely accepting the latter alternative. As the Supreme Court said long ago in The Lulu, 10 Wall. 192, 201, 77 U.S. 192, 201, 19 L.Ed. 906, "[A] party to a transaction, where his rights are liable to be injuriously affected by notice, cannot willfully shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received." See also Jones v. New York Guaranty & Indemnity Co., 101 U.S. 622, 25 L.Ed. 1030; Greenspahn v. Joseph E. Seagram & Sons, 2 Cir., 186 F.2d 616; Booth Fisheries Corp. v. Coe, 72 App. D.C. 195, 114 F.2d 462, certiorari denied 311 U.S. 691, 61 S.Ct. 72, 85 L.Ed. 447; Union Guardian Trust Co. v. Schram, 6 Cir., 123 F.2d 579.

The petition for enforcement is denied.

---

1. The Board's strongest precedent, N. L. R. B. v. International Ass'n of Machinists, Local No. 504, 9 Cir., 203 F.2d 173, is easily distinguishable. There the union both before and after discharge reiterated its position that both dues and fines would have to be paid, so that the Board and the court could reasonably find a tender to have been useless.