COMMONWEALTH *vs.* FRANCIS X. MURRAY. August 14, 1986. *Constitutional Law*, Double jeopardy. *Practice, Criminal*, Mistrial, Opening statement.

During an opening statement before a jury of six, defense counsel made remarks which provoked a motion for a mistrial. After consultation with counsel and exploration of alternatives,[1] the trial judge declared a mistrial. Before the commencement of a second jury trial (the defendant had been found guilty at a bench trial), the defendant moved before another District Court judge for dismissal of the complaint on the ground of double jeopardy. That motion was allowed. Following *Arizona* v. *Washington*, 434 U.S. 497 (1978), *Jones* v. *Commonwealth*, 379 Mass. 607 (1980), and *Lovett* v. *Commonwealth*, 393 Mass. 444 (1984), we reverse.

The charge against the defendant was that on November 17, 1984, he had stolen approximately $1,800 in Stockbridge from an office belonging to Michael Abdallah, and had struck Abdallah on the way out, hence the formal complaints for larceny of property of over $100 and assault and battery. Abdallah was involved in a variety of enterprises in Stockbridge, including a liquor store and a restaurant. When defense counsel, Mr. Vita, opened he said:

> " [A]nd I submit that you will be, from the evidence, entitled to draw the inference that Mr. Abdallah himself is engaged in gambling in connection with the tour business, and in his personal affairs."

---

[1] There is a fleeting reference in the record to "how to save this." There is a reference in the judge's findings to discussions of the mistrial issue "in chambers."

Warming to his opening speech, Mr. Vita added:

> "Now you're going to hear testimony from Mr. Abdallah, that he made an insurance claim, he made an insurance claim for the lost cash, and that he received reimbursement from the insurance company, except for $100 deductible, he got $1,747 reimbursment from the insurance company."

What was wrong with the first remark was that Mr. Vita knew of no evidence that Mr. Abdallah (if it made the slightest difference in terms of the crimes alleged) was a gambler. He conceded when questioned by the trial judge that he was operating on nothing better than "a reasonable lawyer's hunch." As to the second remark, it was grievously irrelevant, and Mr. Vita must have known it was. That Abdallah had recovered for his losses from theft did not diminish the crime. There can have been no purpose in either of the quoted remarks other than to place the victim on trial and thereby make the jury better disposed to the defendant.

So doing may be a marginally tolerable tactic during cross-examination and during closing argument. Opening statements, however, are limited to outlining what counsel expects to prove or support by relevant evidence. That expectation must have support in counsel's good faith belief that relevant evidence is admissible and available. S.J.C. Rule 3:08, DF 12, as appearing in 382 Mass. 807 (1981). *Commonwealth* v. *Fazio*, 375 Mass. 451, 454-456 (1978). *Lovett* v. *Commonwealth*, 393 Mass. at 449 n.6. Smith, Criminal Practice and Procedure §§ 1835-1839 (2d ed. 1983). Indeed, it is unprofessional conduct for defense counsel to allude to evidence in the absence of a reasonable, good faith basis that the evidence will be tendered. *Commonwealth* v. *McJunkin*, 11 Mass. App. Ct. 609, 616 (1981). An opening statement for the defense may be limited by a trial judge, acting within his discretion, to particularized evidence which the defendant expects to adduce. *Commonwealth* v. *Medeiros*, 15 Mass. App. Ct. 913 (1983). An intuitive sense that the evidence may be smoked out of a prosecution witness is not enough. *Ibid.*

All these tests of expectability, relevance, admissibility, and particularity were failed by the defense counsel's opening in the instant case — and by a wide margin. One may harbor a measure of doubt as to how irretrievably the bad parts of the opening poisoned the atmosphere of the trial. As to the degree of the pollution, however, and the possibility of sanitizing it, i.e., the "manifest necessity" for declaring a mistrial, we are to accord deference to the trial judge's evaluation. "He has seen and heard the jurors during their [selection]. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors." *Arizona* v. *Washington*, 434 U.S. at 513-514. See also *Lovett* v. *Commonwealth*, 393 Mass. at 448.

Here there was discussion of the harm done and consideration — albeit somewhat unimaginative — of what might be done to repair the damage. The judge did not act irrationally or irresponsibly. *Arizona* v. *Washington*, 434 U.S. at 514. *Lovett* v. *Commonwealth*, 393 Mass. at 450. The trial judge's findings state that he considered and rejected curative instructions. No specific curative instructions were suggested by the defendant. See *id.* at 447-449. Contrast *Couto* v. *Commonwealth*, 18 Mass. App. Ct. 913 (1984).

Finally, there is the factor that it would be a reproach to the administration of justice if a defendant, through his counsel, could defile the atmosphere of a trial and, after the mistrial had been declared, could turn this to advantage by claiming double jeopardy. *Jones* v. *Commonwealth*, 379 Mass. at 620. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 379 (1963). In reviewing the exercise of the trial judge's discretionary power, it is appropriate to take into account that the occasion for the judge's having to consider whether it was manifestly necessary to declare a mistrial had been created by the wilful conduct of defense counsel. The crisis erupted at a very early stage of trial. Although jeopardy attaches in a jury trial when a jury is empaneled and sworn, *Commonwealth* v. *Ludwig*, 370 Mass. 31, 33 (1976), the financial and emotional sufferings of the defendant, the dominant underpinning of the doctrine of double jeopardy (see *Arizona* v. *Washington*, 434 U.S. at 503-504), are less when a trial derails at the start, rather than close to the finish. Certainly when defense counsel has played so central a role in the derailment, the early timing of the declaration of mistrial may be taken as a factor in deciding that the trial judge's discretion was correctly exercised.

The dismissals of the complaints are vacated. The cases are to stand for trial. The Commonwealth's motion for costs incident to paying the travel costs of a police officer from Columbia City, Indiana, has not, so far as may be seen from the docket, been decided. That motion shall be acted upon by the judge who sits at the trial.

*So ordered.*

*Lee Diane Flournoy*, Assistant District Attorney, for the Commonwealth.
*Richard J. Vita* for the defendant.