## COMMONWEALTH vs. MARTIN F. DELANEY, JR.

Essex. December 4, 1996. - July 28, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Protective Order. Abuse Prevention. Due Process of Law,* Abuse prevention, Notice. *Practice, Criminal,* Severance, Instructions to jury, Contempt, Argument by prosecutor. *Contempt. Intent. Witness,* Credibility. *Evidence,* Credibility of witness, Hearsay, Relevancy and materiality.

Where a defendant was served at his last and usual place of abode with a temporary restraining order issued pursuant to G. L. c. 209A, with notice that, if he failed to appear at a hearing, the order would continue in effect without further order of the court, and where the order was so extended pursuant to G. L. c. 209A, § 4, personal service of the extended order was not a prerequisite to prosecution of the defendant for violation of the order [589-591]; moreover, where the defendant with reasonable inquiry could have discovered that the temporary order had been extended, there could be no argument on due process grounds that he was deprived of an opportunity to seek to have the extended order vacated [591-592]. LYNCH, J., dissenting.

Evidence at the trial of complaints alleging violation of a protective order was sufficient to warrant the conclusion that the defendant had knowledge of the terms of the order. [592-593] LYNCH, J., dissenting.

In a criminal case in which the defendant was charged with six counts of violation of a restraining order, intimidation of a witness, and stalking, on four various dates within an eight-week period, the judge correctly joined the offenses for trial, where the allegations demonstrated a pattern of conduct by the defendant toward the same victim, where evidence of each offense would have been admissible at trials of the offenses separately, and where the defendant did not demonstrate any prejudice from joinder. [593-595]

The provisions of G. L. c. 209, § 7, establishing a distinct crime for certain violations of c. 209A orders, do not require any further proof of a defendant's intent or mens rea than proof that the defendant knew the terms of the order in question. [595-597]

At a criminal trial, there was no substantial risk of a miscarriage of justice in the judge's exclusion of certain improper argument by defense counsel; of a certain improper reference to hearsay in defense counsel's opening remarks; and of certain cross-examination of a witness that was irrelevant to her credibility; further, error, if any, in the judge's instructions to the jury was harmless. [597-598]

No substantial risk of a miscarriage of justice was created at a criminal trial by the prosecutor's closing argument which was based on the evidence

admitted and reasonable inferences therefrom; further, the judge's instructions made it clear that arguments of counsel were not evidence. [599-601] LYNCH, J., dissenting.


COMPLAINTS received and sworn to in the Lawrence Division of the District Court Department on September 29, 1992, October 9, 1992, and November 4, 1992, respectively.

The cases were tried before *Michael T. Stella, Jr.,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark J. Gillis* for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. On March 9, 1994, a District Court jury found the defendant, Martin F. Delaney, Jr., guilty of five counts of violating a protective order issued pursuant to G. L. c. 209A.[1] The defendant appeals from the convictions, as well as from an order denying his motion for a new trial on various grounds. We transferred the case here on our motion. We affirm.

The following facts are not in dispute. On August 31, 1992, the victim, the defendant's former female companion, obtained an ex parte protective order against the defendant pursuant to G. L. c. 209A, § 4. The order stated that the defendant was to refrain from having any contact with the victim, and specifically restrained the defendant from following the victim and making telephone calls to her. The order also stated that there was to be a hearing on September 11, 1992, to determine whether the order would be extended and that the defendant "may appear, with or without an attorney, to oppose any extension or expansion of this [o]rder. If the defendant does not appear, an extended or expanded [o]rder may remain in effect for up to one year." Service of the temporary order was made by leaving a copy of it at the defendant's last and usual place of abode on September 1, 1992. On September 11, 1992, the defendant did not appear at the hearing; the order was extended for one year to September 10, 1993. The extended order contained the same

---

[1] The defendant was acquitted of one count of violating a protective order on October 12, 1992, one count of stalking on November 2, 1992, and one count of intimidating a witness on September 28, 1992.

terms as the temporary order, but there is no evidence that the extended order was ever served on the defendant.

There was evidence from which the jury could have found the following facts. On September 14, 1992, the defendant telephoned the victim and stated, "You got a restraining order against me." The defendant offered to put a clutch in the victim's automobile for free if she would "drop" the restraining order against him. The defendant again telephoned the victim on September 18, 1992, and asked the victim to "give [him] another chance." On September 28, 1992, the defendant forced the victim's automobile off the road and apparently referring to charges in an unrelated matter told her, "You are going to drop the charges or else." The defendant was arrested following this incident. On October 8, 1992, the defendant pulled his vehicle up behind the victim and asked her "if [they] could handle their problems outside of court." Again, the defendant was arrested. Finally, on November 2, the defendant blocked the victim's vehicle as she tried to leave a gasoline station.

On appeal, the defendant argues that, because he never was served with the extended order he was charged with violating, the judge improperly asserted jurisdiction over this case and denied him his due process rights under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The defendant also argues that the Commonwealth improperly joined the charges against him; he alleges error in the jury instructions and claims that the judge's biased treatment of defense counsel deprived him of his right to a fair trial. Finally, the defendant claims that his motion for a new trial was improperly denied because the Commonwealth's closing argument distorted the evidence against him.[2]

1. *Failure to serve the extended order.* The defendant first argues that the failure to serve him with a copy of the extended order deprived the District Court judge of subject matter jurisdiction over his case. Because it is clear that the District Court had subject matter jurisdiction,[3] we treat the defendant's argument as asserting that the statute requires that there be

[2]The defendant also appeals from the denial of his motion for a new trial on the above grounds.

[3]Subject matter jurisdiction refers to the "court's power to hear and determine cases of the general class or category to which proceedings in ques-

personal service on the defendant before he can be convicted of violating the order. We conclude that personal service of the extended order is not required.

General Laws c. 209A, § 7, requires that a copy of an order issued under §§ 3, 4, or 5 of G. L. c. 209A be served on a defendant.[4] The defendant argues, therefore, that, absent such service, he cannot be convicted of violating an order issued pursuant to G. L. c. 209A. The defendant's argument, however,

---

tion belong; the power to deal with the general subject involved in the action." Black's Law Dictionary 1425 (6th ed. 1990).

General Laws c. 209A, § 7, provides in pertinent part: "Any such violation may be enforced in the superior, the district or Boston municipal court departments." In addition, District Courts have jurisdiction of all misdemeanors, G. L. c. 218, § 26, and violation of a c. 209A protective order is a misdemeanor.

[4]Section 7 of G. L. c. 209A provides: "Whenever the court orders under . . . [§§ 3, 4, and 5] of [c. 209A] . . . the defendant to vacate, refrain from abusing the plaintiff or to have no contact with the plaintiff or the plaintiff's minor child . . . the appropriate law enforcement agency . . . shall serve one copy of each order upon the defendant . . . ."

Section 3 of G. L. c. 209A provides: "A person suffering from abuse from an adult or minor family or household member may file a complaint in the court requesting protection from such abuse, including, but not limited to, the following orders: (*a*) ordering the defendant to refrain from abusing the plaintiff, whether the defendant is an adult or minor; (*b*) ordering the defendant to refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor . . . ."

Section 4 of G. L. c. 209A provides: "Upon the filing of a complaint under this chapter, the court may enter such temporary orders as it deems necessary to protect a plaintiff from abuse, including relief as provided in section three. Such relief shall not be continued upon the filing of a complaint for divorce, separate support, or paternity action.

"If the plaintiff demonstrates a substantial likelihood of immediate danger of abuse, the court may enter such temporary relief orders without notice as it deems necessary to protect the plaintiff from abuse and shall immediately thereafter notify the defendant that the temporary orders have been issued. The court shall give the defendant an opportunity to be heard on the question of continuing the temporary order . . . and of granting other relief as requested by the plaintiff no later than ten days after such orders are entered. Notice shall be made by the appropriate law enforcement agency as provided in section seven. If the defendant does not appear at such subsequent hearing, the temporary orders shall continue in effect without further order of the court."

Section 5 of G. L. c. 209A provides: "When the court is closed for business, any justice of the superior, probate and family, district or Boston municipal court departments may grant relief to the plaintiff as provided under section four if the plaintiff demonstrates a substantial likelihood of immediate danger of abuse."

ignores the fact that the temporary order *was* served on him at his last and usual place of abode and that the evidence warranted a finding that he had knowledge of the order. This order warned the defendant that, if he failed to appear, "an extended or expanded [o]rder may remain in effect."[5] Section 4 mandates that "the temporary order[] shall continue in effect *without further order of the court*" when the defendant fails to appear (emphasis added).[6] The jury could have found that the defendant had actual and constructive notice of the order and that it continued in effect after the hearing date. In these circumstances the service of the extended order on the defendant was not a prerequisite to his prosecution for violating the terms of the order. This, however, does not end our inquiry. The defendant also argues that prosecuting a defendant for violating an order that has not been served on him violates the defendant's due process rights.

As the defendant points out, "[t]he fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Matter of Kenney*, 399 Mass. 431, 435 (1987). See *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 376 (1985); *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 458 (1983). The defendant, however, does not argue that he was deprived of an opportunity to be heard before the judge entered the extended order.[7] Apparently, the defendant's argument is that, because he was not served with a copy of the extended order, he was precluded from moving to have the extended order vacated. G. L. c. 209A, § 3 ("[t]he court may modify its order at any subsequent time

---

[5]There was evidence that the defendant knew of the process of how a protective order begins as a temporary order and could be extended after a hearing. In fact, the defendant introduced evidence of a previous protective order obtained against him.

[6]"The court may modify its order at any subsequent time upon motion by either party." G. L. c. 209A, § 3, fourth par.

[7]It is clear that "[d]ue process requires that no [extended] order be issued against a person without prior notice and the opportunity to be heard." Commentary to § 5:05 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 1996). "[T]he adequacy of notice so far as due process is concerned is dependent on whether the form of notice provided is 'reasonably calculated to give . . . actual notice of the proceedings and an opportunity to be heard.' " *Commonwealth* v. *Olivo*, 369 Mass. 62, 68 (1975), quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940). In the instant case, service of the temporary order was made by delivering a copy of the order to the defendant's last and usual address. The defendant does not argue that the extended order against him was entered improperly, and we do not consider that issue.

upon motion by either party"). The ex parte order informed the defendant that an extended order might be entered against him if he did not appear at the hearing. This information was certainly sufficient to put the defendant on notice, for "[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975), quoting *Essex Nat'l Bank* v. *Hurley*, 16 F.2d 427, 428 (1st Cir. 1926). Indeed, a party may not "shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received." *Commonwealth* v. *Olivo, supra,* quoting *NLRB* v. *Local 3, Bloomingdale Dist. 65, Retail, Wholesale & Dep't Store Union,* 216 F.2d 285, 288 (2d Cir. 1954). Thus, the defendant, who with reasonable inquiry could have discovered that the temporary order had been extended, cannot be heard to complain that he was deprived of an opportunity to seek to have that extended order vacated.

Due process also requires that a person be given a "reasonable opportunity to know what the order prohibited, so that he might act accordingly." *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996). See *Commonwealth* v. *Freiberg*, 405 Mass. 282, 289, cert. denied, 493 U.S. 940 (1989) (due process requires that individuals receive fair notice of conduct proscribed by statute); *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 522 (1986) (same); *Commonwealth* v. *Williams,* 395 Mass. 302, 304 (1985), quoting *Kolender* v. *Lawson,* 461 U.S. 352, 357 (1974) ("penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement' "). Clearly, a showing that a defendant was served with a copy of a court order is strong evidence that a defendant had knowledge that certain conduct would not be permitted and could result in a criminal conviction. The failure of such service, however, is not fatal where the Commonwealth can prove beyond a reasonable doubt that the defendant had actual knowledge of the terms of the order. *Bongiovi* v. *LaBeet,* 155 A.D.2d 320, 321 (N.Y. 1989) ("[a]t any rate, respondent conceded that she was, in fact, aware of the order of protection and, therefore, personal service need not be demonstrated"). Cf.

*State* v. *Delap*, 466 N.W.2d 264, 269 (Iowa Ct. App. 1990) (whether order sufficiently clear, definite and unambiguous to support contempt adjudication irrelevant because defendant had actual knowledge of "no contact condition" in order and consequences of violating condition). Indeed, as long as a defendant had actual knowledge of the terms of the order, there is no danger that a defendant will be convicted of conduct not known to be violative of a court order. Cf. *Lambert* v. *California*, 355 U.S. 225, 229 (1957) (where there was "absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it," defendant's conviction violated due process).

We conclude then that the failure to serve a copy of the extended order on the defendant is not a bar to charging him with violating that order. Failure to serve the defendant, however, with a copy of the extended order is, of course, relevant to a determination as to whether the defendant possessed the knowledge required to convict him of violating the order. See note 5, *supra*. Evidence that the ex parte order delivered to the defendant's last and usual address was actually received warrants the conclusion that the defendant had actual knowledge of the terms of the extended order, as does the defendant's testimony that, following his arrest after the September 28 incident, he was aware that there was a protective order against him.

2. *Joinder*. Prior to trial, there was a joinder of numerous charges pending against the defendant.[8] The defendant argues that the offenses joined did not involve a "pattern of conduct" and that he was severely prejudiced by the joining of these charges. We disagree.

A decision on "whether joinder is appropriate is committed to the sound discretion of the trial judge." *Commonwealth* v. *Montanez*, 410 Mass. 290, 303 (1991). See *Commonwealth* v. *Shelton*, 37 Mass. App. Ct. 964, 964 (1994). The defendant bears the burden of demonstrating that prejudice will

---

[8]The Commonwealth was allowed to join the five offenses of which the defendant was convicted and three charges that he was acquitted of, including charges of violating a protective order on October 12, 1992, stalking, and intimidating a witness. See note 1, *supra*. The Commonwealth also sought to join for trial charges of assault and battery, malicious destruction of property, and threatening to commit a crime which involved the same victim. The motion judge ordered these offenses to be tried separately and the defendant was found not guilty.

result from a failure to sever the charges. *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981). Indeed, Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979), provides that where offenses are related, "[t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice."

Related offenses are defined in part as "aris[ing] out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1), 378 Mass. 859 (1979). We have stated that offenses are related if the evidence "in its totality shows a common scheme and pattern of operation that tends to prove all the indictments." *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995). Time and space play an important role in determining whether offenses are related offenses for the purposes of joinder. See *Commonwealth* v. *Mamay*, 407 Mass. 412, 417 (1990); *Commonwealth* v. *Cruz*, 373 Mass. 676, 690 (1977).

In the instant case, the judge joined for trial the charges of violating a c. 209A order, stalking, and intimidating a witness. All the incidents giving rise to the charges involved the same victim. All the incidents occurred between September and November of 1992; indeed, the six counts of c. 209A violations, which include the five counts of which the defendant was ultimately convicted, occurred within an approximate eight-week period. Thus, the offenses charged demonstrated a pattern of conduct by the defendant toward the victim because of his unhappiness with the ending of their relationship and his desire to reunite with her. See *Commonwealth* v. *Feijoo*, *supra* at 495 (joinder appropriate where offenses indicated scheme whereby defendant used his position as karate teacher to induce students to engage in homosexual activity); *Commonwealth* v. *Mamay*, *supra* at 416 (joinder appropriate where offenses indicated scheme whereby defendant used his position of authority and trust to commit sexual crimes on female patients visiting his office). As such, evidence of each offense would have been admissible at trials for a separate offense. See *Commonwealth* v. *Feijoo*, *supra*. Indeed, if the charges were tried separately, much testimony would be duplicated at each trial merely establishing the relationship between the victim and the defendant. See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 32 (1982) ("[j]oinder may promote economy in the trial of criminal offenses, particularly

when the same witnesses will testify concerning more than one offense"). Finally, we note that, in the instant case, the defendant has failed to demonstrate that he was prejudiced by the joinder of these offenses. The defendant's burden is "not satisfied by a showing merely that the defendant's chances for acquittal would have been better had the [complaints] been tried separately." *Commonwealth* v. *Montanez, supra* at 304. Rather, the defendant's burden is to show that "the prejudice resulting from a joint trial is so compelling that it prevent[ed] [him] from obtaining a fair trial." *Commonwealth* v. *Clarke*, 418 Mass. 207, 217 (1994), quoting *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). See *Commonwealth* v. *Ferraro*, 424 Mass. 87, 90 (1997). In the instant case, the jury acquitted the defendant of the stalking charge and the charge that he intimidated a witness. The defendant was also acquitted of one of the counts charging him with violating a protective order. Thus, it is clear that the jury carefully considered the evidence with regard to each crime charged.

3. *Jury instructions.* The defendant argues that, in order to be convicted of violating a c. 209A order, the Commonwealth must show a manifest intent on the part of the defendant to violate that order. We disagree.

The judge instructed the jury that, in order to convict the defendant of the crime of violating a c. 209A order, the Commonwealth must prove "first . . . that a court had issued an order pursuant to Chapter 209A of our General Laws, which ordered the defendant to refrain from abusing the alleged victim. Second, that such order was in effect on the date that this violation of the order allegedly occurred. Third, that the defendant knew that the pertinent terms of the order were in effect, either by having received a copy of the order or in some other way. And fourth, that the defendant violated the order by failing to vacate the household or by abusing alleged victim."

The defendant argues that this charge was erroneous because, by allowing the jury to convict the defendant based solely on the fact that there was a violation of the order instead of requiring a finding that the defendant intended to violate the order, the instruction lowered the Commonwealth's burden of proof. The defendant urges us to look to the law of contempt and conclude that an essential element of the crime of violating a c. 209A order is a finding that the defendant intended to violate the order. Because there was no objection at trial, we review the

charge to determine whether it "was so erroneous that it created a 'substantial risk of a miscarriage of justice.' " *Commonwealth* v. *Preziosi*, 399 Mass. 748, 751 (1987), quoting *Commonwealth* v. *Murray*, 396 Mass. 702, 705 (1986).

We have read § 7 as limiting to the enumerated offenses those actions which will constitute a criminal violation of G. L. c. 209A. *Commonwealth* v. *Gordon*, 407 Mass. 340, 345 (1990). All other violations of a c. 209A order cannot be prosecuted as a statutory offense; rather, they can be prosecuted as criminal contempt. Commentary to § 8:02 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 1996).

In order to prove a defendant guilty of criminal contempt, the Commonwealth must prove beyond a reasonable doubt that "there was a clear, outstanding order of the court, that the defendant knew of that order, and that the defendant clearly and intentionally disobeyed that order in circumstances in which he was able to obey it." *Commonwealth* v. *Brogan*, 415 Mass. 169, 171 (1993), quoting *Furtado* v. *Furtado*, 380 Mass. 137, 145 (1980). See *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 45 (1972) (Tauro, C.J., concurring) ("[t]he rule that intent is not an element of civil contempt is a direct consequence of the separate functions of criminal and civil contempt").

While intent is an element of criminal contempt proceedings, § 7 of G. L. c. 209A establishes a distinct statutory crime for certain violations of c. 209A orders. The statute does not speak explicitly to the defendant's state of mind; it is conceded, however, by the Commonwealth that, in order to convict a defendant of violating an order, it must be proved beyond a reasonable doubt that the defendant knew of the order. See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 234 (1975) ("clear statutory language would be needed . . . to buttress an interpretation that knowledge was irrelevant"); *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982) ("[b]ecause traditionally, at common law, some element of intent or knowledge was required before punishment could be imposed . . . and because due process considerations may, in some cases, require some degree of notice . . . courts are reluctant to infer a legislative intent to impose absolute liability" [citations omitted]). This statute, however, requires no more knowledge than that the defendant knew of the order. We decline to read

any additional mens rea requirements into the statute.[9] *Simon* v. *Solomon*, 385 Mass. 91, 103 (1982) ("[a]lthough the requirement of due process places some limits on legislative power to penalize innocent conduct, legislatures generally have broad power to define and limit the mens rea element of criminal offenses"); *Commonwealth* v. *Jackson*, 369 Mass. 904, 909 (1976) ("Legislature has great latitude to determine what conduct should be regarded as criminal and to prescribe penalties to vindicate the legitimate interests of society"). The defendant does not argue that the failure of the statute to require a showing of intentional violation is unconstitutional.

4. *Failure to allow certain arguments.* The defendant also argues that the judge erred in failing to allow the defendant to pursue certain avenues of argument.[10] The defendant attempts to cite five instances where the judge improperly discarded the defendant's arguments. We think that this argument is without merit.

At trial, the defendant did not object to the judge's rulings, instructions, or comments. Therefore, we examine whether the judge's actions constituted a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Boyer*, 400 Mass. 52, 59 (1987).

The first occasion occurred during the defendant's opening statement where defense counsel made the following comment: "[The victim] has a motive in this trial, and you will hear it. She has a credibility problem, you will find out, that she has a hard time telling the truth." Following an objection by the prosecutor, the judge instructed: "The credibility and believability of witnesses is the sole province of the jurors. Refrain from making comment." There was no error. Defense counsel's statement was improper argument. See *United States* v. *Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). The judge

---

[9]We note that the Appeals Court recently stated that, on a complaint charging a defendant with a violation of a G. L. c. 209A order, the Commonwealth must prove that "there was a clear, outstanding order of the court, that the defendant knew of the order, and that the defendant clearly and intentionally disobeyed the order in circumstances in which he was able to obey it." *Commonwealth* v. *O'Shea*, 41 Mass. App. Ct. 115, 118 (1996), quoting *Commonwealth* v. *Brogan*, 415 Mass. 169, 171 (1993). To the extent that that decision is inconsistent with our decision today, it is incorrect.

[10]The defendant's argument includes references to bias on the part of the trial judge. There is neither support nor a specific argument for that claim. The defendant's discussion on that point does not rise to the level of appellate argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

did not create a substantial risk of a miscarriage of justice with his instruction. The defendant's second instance involved his discussion of a note left on a witness's automobile that related that the defendant "had tried to break [the victim's] arm" and that he was "violent." The judge reminded the jury that the opening statements were not evidence. The judge acted properly because the evidence from the note regarding the victim's arm was inadmissible hearsay and therefore improper to discuss as evidence during opening statements. See *Commonwealth* v. *Murray*, 22 Mass. App. Ct. 984, 985 (1986). The note was not offered as an exhibit.

The next two allegations of error involve the judge's refusal to allow the defense to pursue during cross-examination a line of argument that the victim had been on welfare. The defense contended that the issue was relevant to the defendant's credibility. Despite being given an opportunity to do so, the defense was unable to produce a relevant link between the victim's welfare status and her credibility. These rulings were not erroneous.

The defendant argues that the judge's instructions to the jury on an employer's obligation to report monies paid to employees did not permit the defense's point to reach the jury. However, the fact that the witness evaded taxes did reach the jury.[11] The judge's instruction to the jury merely clarified the distinction between the employer's obligation to report income and the employee's obligation to file a tax return. An error, if any, on the part of the judge was harmless.

---

[11]The following exchange occurred between the defense counsel and the witness:

DEFENSE COUNSEL: "Did you ever pay taxes on [the cash money you received from Riverside House of Pizza]?"

THE PROSECUTOR: "Objection."

DEFENSE COUNSEL: "It goes to credibility, Your Honor."

THE JUDGE: "She can have that."

DEFENSE COUNSEL: "Did you ever pay taxes?"

THE WITNESS: "No, I didn't."

DEFENSE COUNSEL: "You never reported that to the State or the Federal government?"

THE WITNESS: "No."

5. *Closing argument.* The defendant also argues that the prosecutor misstated the evidence in her closing argument. He claims that the prosecutor mislead the jury by implying that the proof of service was for the permanent order, rather than for the temporary order. We do not agree.

Because the defendant failed to object to the closing argument, the standard of review is whether the prosecutor's argument created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Mello*, 420 Mass. 375 (1995); *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993); *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987). Under that standard, "[w]e analyze the remarks in 'light of the "entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." ' " *Commonwealth* v. *Marquetty*, *supra*, quoting *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). The defendant's argument, however, ignores that standard and focuses on one sentence out of context. To adopt the defendant's position we would have to abandon our responsibility to analyze the prosecutor's remarks in light of the entire argument. See *Marquetty*, *supra* at 445.

Read in context, the relevant portion of the Commonwealth's closing argument breaks down into two distinct parts. The first part of the excerpt addresses the process through which the victim obtained a restraining order against the defendant. The second half of the excerpt switches to the defendant's claim that he never received the original temporary restraining order. The Commonwealth simply highlighted the return of service from the temporary order.[12] The prosecutor was entitled to reply to the defendant's main contention that he had never received the

---

[12]The prosecutor stated: "[At] the end of August of 1992, [the victim] went to Lawrence District Court. She went to Lawrence District Court in front of a judge, under oath, and she told the judge that she feared for her life and she needed help. She needed help from the court and she needed protection from the court. And that's what the court gave her. The court gave her a restraining order. This restraining order, ladies and gentlemen, which you will have with you in the jury room, it states on it, 'The court has issued the following orders to the defendant. You are not to abuse the plaintiff. You are to immediately leave and stay away from her address. You are to refrain from making phone calls to said plaintiff, not to follow her and to have no contact with her whatsoever.' [The victim] again came back to the court on September 11, 1992, asking that order to be extended for a year. The judge ordered again

temporary or the extended order.[13] The prosecutor's reply was based on evidence admitted during the trial.

The defendant argues that it was never brought out that a copy of the extended order was not served on him. However, that fact was brought out during the trial by the defendant and in the defendant's closing. If the defendant desired to focus on the fact that the extended order was not served, he had the opportunity to do so by noting the absence of service of the extended order in his closing argument.[14] Instead, the defendant's argument at trial attempted to convince the jurors that there was no service of any kind.

The Commonwealth noted that the return of service was left at the address which the defendant admitted was his primary

---

[the defendant] to stay away from [the victim]."

The prosecutor then shifted focus and continued: "You have in front of you — you will have in front of you the return of service. It states here it was left, a copy of this at the defendant's last and usual address. [The defendant], by his own admission, has lived at 35 Groton Street for the last twelve years. He gets his mail there. He gets his bills there. He gets his taxes there. In fact, all of his mail is left on the kitchen table. But this one very important piece of paper, he didn't get. Isn't that convenient? You heard [the defendant], [the defendant's brother], and [the defendant's mother] testify that when he got an important letter from his attorney, everyone was searching for him to find him. But when there is a piece of paper given to Mr. Delaney by a police officer, he's claiming he didn't get it. I would suggest that's a little too convenient." (Paragraph break added.)

[13]On direct examination, the defendant said that he had no knowledge of the order until he was arrested on September 28, 1992. Further, in closing argument defense counsel stated, "Look at the restraining order. The Commonwealth has to prove beyond a reasonable doubt that [the defendant] knew about the restraining order. Did he receive it in hand from a police officer? No." This statement clearly referred to the defense argument that neither the temporary restraining order nor the extended order had been served on the defendant.

[14]The dissent suggests that all parties "operated as if the proof of service before them was proof of service of the extended order." *Post* at 606-607. We do not agree. Examination and cross-examination of the defendant on the temporary order do not show that the parties focused solely on proof of service of the extended order. When the exhibit was introduced, it was introduced as the restraining order in effect against the defendant without reference to the return of service because that return was not yet at issue. Despite an effort to do so, the dissent cannot point to any instance in the transcript where the prosecutor stated or implied that the return of service was for the extended order. As we read the record, the prosecutor's challenge, see *post* at note 5, went to the defendant's testimony that he had not received the temporary order which was left at his last and usual home address.

place of residence for twelve years. The evidence highlighted by the prosecutor was how and where the defendant received his mail, evidence which came from the defendant himself. The prosecutor simply was arguing facts in evidence and reasonable inferences from those facts. *Commonwealth* v. *Paradise*, 405 Mass. 141, 152 (1989).

Further, the prosecutor encouraged the jurors to look at the proof of return of service by bringing their attention to the exhibit which was the temporary order, and which was extended on September 11, 1992. In doing so, the prosecutor made clear her intention that the jurors look at the evidence including the proof of return of service. The proof of service unequivocally shows the date and time of service as "9/1/92 10:00 AM."[15]

We also trust the citizens that serve as the foundation of our jury system. The judge told the jurors both before the trial began and after the closing argument that they were the sole finders of fact and that arguments by the attorneys should not be viewed as evidence.[16] The judge's instructions should have cured the prejudicial effect, if any, of the statement that the defendant would like us to use to conclude there was a substantial miscarriage of justice. "[T]he judge made it clear that the arguments of counsel were not evidence. The argument was forceful but fair. It did not exceed the limits of propriety." *Commonwealth* v. *Haskins*, 411 Mass. 120, 122 (1991).

*Judgments affirmed.*

LYNCH, J. (dissenting). Today the court affirms a criminal conviction for violating a protective order that had not been

---

[15]The temporary order, left at the defendant's last and usual address, referred to a hearing date of September 11, 1992, and included the statement that "[i]f the defendant does not appear [at the scheduled hearing], an extended or expanded Order may remain in effect for up to one year."

[16]Before any evidence was presented, the judge told the jury: "If one of the attorneys or I refer to some part of the evidence, and that does not coincide with what your recollection is, it is your recollection which you are to follow in your deliberation, not the attorneys or not mine."

After the closing arguments had concluded, the judge again instructed the jury: "The opening statements and the closing arguments of the lawyers are not a substitute for the evidence. They are only intended to assist you in understanding the evidence and the contentions of the parties."

served on the defendant, even though G. L. c. 209A, § 7,[1] clearly requires such service and even though the prosecutor told the jury that service had been made. Accordingly, I dissent.

It should be kept in mind that, although two protective orders issued against the defendant — a temporary order and an extended order — only one order, the extended order, formed the basis of the defendant's conviction. The temporary order expired on September 11, 1992.

During closing argument, the prosecutor stated:

> "[At] the end of August of 1992, [the complainant] went to Lawrence District Court. . . . The court gave her a restraining order. This restraining order, ladies and gentlemen, which you will have with you in the jury room, it states on it, '[t]he court has issued the following orders to the defendant. You are not to abuse the plaintiff. You are to immediately leave and stay away from her address. You are to refrain from making phone calls to said plaintiff, not to follow her and to have no contact with her whatsoever.'

> "[The complainant] again came back to the court on September 11, 1992, asking that order to be extended for a year. The judge ordered again [the defendant] to stay away from [the complainant]. *You have in front of you — you will have in front of you the return of service. It states here it was left, a copy of this at the defendant's last and usual address.*

> "[The defendant], by his own admission, has lived at [that address] for the last twelve years. He gets his mail there. He gets his bills there. He gets his taxes there. In fact, all of his mail is left on the kitchen table. But this one very important piece of paper, he didn't get. Isn't that convenient?"

> "You heard [the defendant], [the defendant's brother]

---

[1]General Laws c. 209A, § 7, states in pertinent part: "Whenever the court orders under . . . [§§ 3, 4, and 5] of [c. 209A] . . . the defendant to vacate, refrain from abusing the plaintiff or to have no contact with the plaintiff or the plaintiff's minor child . . . the appropriate law enforcement agency . . . *shall* serve one copy of each order upon the defendant . . . . The law enforcement agency *shall* promptly make its return of service to the court" (emphasis added).

and [the defendant's mother] testify that, when he got an important letter from his attorney, everyone was searching for him to find him. *But when there is a piece of paper given to [the defendant] by a police officer,* he's claiming he didn't get it. I would suggest that's a little too convenient." (Emphasis added.)

The court reads a paragraph break immediately prior to the prosecutor's reference to the return of service, and after so doing, asserts that "read in context" the Commonwealth's closing argument breaks down into two distinct parts, one part addressing the process by which the complainant obtained a protective order against the defendant and one part addressing the defendant's claim that he never received the original temporary protective order. *Ante* at 599-600 & n.12. The Commonwealth, however, did not argue that the prosecutor was making two distinct arguments, nor does the reproduction of the argument in the Commonwealth's brief insert a paragraph break.[2] I contend that, read in context, it is clear that the prosecutor was improperly suggesting to the jury that what was in front of them was proof of service of the extended order when no such proof existed. Indeed, the prosecutor's reference to the extended order, which the Commonwealth concedes was not served on the defendant, is immediately preceded by the prosecutor's reference to September 11, 1992, the date the complainant obtained the extended order. Moreover immediately following is a reference to testimony that was elicited by the prosecutor alluding to the extended order. See note 5, *infra.* Furthermore, the prosecutor referred to "a piece of paper given to [the defendant] by a police officer." Not even the temporary order was given to the defendant by a police officer; rather, the proof of service of the temporary order states that it was left at the defendant's last and usual address: thus the prosecutor compounded the misstatement she made earlier in her argument.

Because the prosecutor referred both to service and to proof of service which did not exist, her argument misstated the evidence and was improper. It is well settled that "[a] prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence." *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994). See *Com-*

[2]Indeed, the Commonwealth reproduces the same portion of the argument reproduced here and characterizes the argument as referring to "the issue of notice and to the service of the protective order."

*monwealth* v. *Kozec*, 399 Mass. 514, 516 (1987); *Commonwealth* v. *Shelley*, 374 Mass. 466, 472 (1978), *S.C.*, 381 Mass. 340 (1980), and 411 Mass. 692 (1992). Moreover, the prosecutor's statement cannot be characterized as responding to the defendant's argument that there was no service at all. The thrust of the defendant's argument was that he did not receive either order and was not aware at least until September 28, 1992, of the existence of a protective order. In support of this claim the defendant offered testimony to the effect that he did not spend a lot of time at the address where the temporary order was left and emphasized that no order was served in hand. More importantly, while the prosecutor was entitled to reply to the defendant's contention, she was not entitled to rebut his contention by stating that proof of service of the extended order would be before the jury and that he had been given written notice by a police officer when those facts were not in evidence.[3]

In the face of such prosecutorial error, several factors must be considered, including whether the argument was seasonably objected to; whether the error was limited to collateral issues or went to the heart of the case; whether the judge's instructions to the jury may have mitigated the error; and generally, whether the error, in the circumstances, possibly made a difference in the jury's conclusion. See *Commonwealth* v. *Kozec*, *supra* at 517-518; *Commonwealth* v. *Pavao*, 34 Mass. App. Ct. 577, 581 (1993). Because the argument here was not objected to, review is limited to whether a substantial risk of a miscarriage of justice has occurred. Where the evidence before the jury has been distorted, however, "we have recognized that the failure to object and possibly obtain a curative instruction may be the very thing which permits the remarks to have their maximum prejudicial effect." *Commonwealth* v. *Shelley*, *supra* at 469. See *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 314 (1973). See also *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 578 (1986); *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978).

---

[3]The court reasons from evidence of a previous protective order obtained against the defendant "that the defendant knew of the process of how a protective order begins as a temporary order and then may be extended after a hearing." *Ante* at 591 n.5. It should be noted, however, that, while there was evidence that the complainant had obtained protective orders against the defendant in the past, she had also, on at least one occasion, failed to appear at the hearing as required in order to get the temporary order extended. Thus, in the defendant's experience, notice of a temporary order did not necessarily mean that an extended order would follow; the absence of any service of an extended order could only have buttressed this conclusion.

Clearly, the defendant's knowledge of the protective order and the terms it contained were crucial elements of the Commonwealth's case. Indeed, without proving beyond a reasonable doubt that the defendant knew of the existence of the order, the defendant could not be convicted of violating the order. Thus, this "is not a case in which overreaching argument was confined to collateral issues only." *Commonwealth* v. *Shelley, supra* at 470. Moreover, the judge's instructions on the mental state element of the crime emphasized that the Commonwealth had to prove that the defendant had actual knowledge of the terms of the extended order, the very issue to which the prosecutor's improper arguments referred. Thus, absent specific instructions that mitigated the error, I do not believe that the judge's reminder to the jury that closing statements are not evidence cured the prejudicial impact of the prosecutor's argument. See *Commonwealth* v. *Rosa*, 412 Mass. 147, 160 (1992) (curative instruction regarding the prosecutor's improper closing argument not sufficient and new trial required given the importance to the Commonwealth's case of the issue that was part of improper argument); *Commonwealth* v. *Clary*, 388 Mass. 583, 591 (1983) ("judge's instructions to the jury, which stated only in general terms that the arguments of counsel are not evidence did not cure adequately the prejudicial impact of the prosecutor's assertion"); *Commonwealth* v. *Pavao, supra* at 581-582 (where prosecutor misstated evidence by improperly attributing to defendant a statement indicating defendant acted with intent necessary to be convicted of murder, new trial required even though judge did instruct the jury that closing arguments were not evidence because there were not forceful statements by judge that argument was inappropriate and should be disregarded); *Commonwealth* v. *Shelley, supra* (where overreaching argument not confined to collateral issues only, adequate curative instructions did not render the prosecutorial misconduct harmless).

The court suggests that the parties knew that the defendant had not been served with a copy of the extended order and chose to use their closing statements to argue whether the defendant received a copy of the temporary order — a doubtful proposition particularly where, until today, a reading of the statute would suggest that a defendant must be served with a copy of the order he was charged with violating. I believe that a

fairer and more plausible reading of the testimony and the clos-
ing arguments suggests that both defense counsel[4] and the
prosecutor[5] operated as if the proof of service before them was

---

[4]A review of several portions of the transcript indicates that defense counsel
had confused the return of service of the temporary order as a return of
service of the extended order. Indeed, when defense counsel moved for a
directed verdict, alleging that the Commonwealth had not proved that the
defendant had known of the existence of the order he was charged with violat-
ing (the extended order), she stated: "Under the facts that on that restraining
order that they have entered into evidence, they have not proven that the
defendant . . . either knew of the pertinent terms of the order were in effect
by either having received a copy of the order or in some other way. The
reason I would state that, Your Honor, is looking at the return of service
checked off as leaving a copy at the defendant's last and usual address as
shown on this order, Your Honor, that doesn't constitute proof that [the
defendant] had any knowledge of the effect of this order. And he had no — it
does not prove that he had knowledge of any portion of the order."

In addition, in her own closing argument, defense counsel argued: "Look at
the restraining order. The Commonwealth has to prove beyond a reasonable
doubt that [the defendant] knew about the restraining order. Did he receive it
in hand from a police officer? No. Could [the complainant] have told the
police officer, well, he's never at that 35 Groton Street address, go to his
parents' house . . . . She never told him that. If she told him that, maybe it
would have gotten served. And who better to know [the defendant's] schedule,
where he is? She knew when she went into court, she knew where that restrain-
ing order was going to be. Could she have gone and taken the restraining
order? Could she have orchestrated his arrest?" Certainly, it would seem
likely that, in both examples, if defense counsel was aware that the extended
order had not been served on the defendant she would have just said so in her
argument to both the judge and the jury.

[5]Indeed, when the defendant was being cross-examined by the prosecutor,
the prosecutor showed the defendant a copy of the extended order that had
been introduced in evidence as the extended order obtained by the complain-
ant on September 11, 1992. The defendant then testified that he lived at the
address indicated on the order and received his mail there. The prosecutor
then challenged the defendant's testimony that he did not receive a copy of
the extended order in the following exchange:

THE PROSECUTOR: "You receive any and all correspondence that is sent to
you at 35 Groton Street; isn't that correct?"

THE DEFENDANT: "Yes. What's your point now?"

THE PROSECUTOR: "But you didn't receive *this* restraining order that was sent
to you; is that correct?"

THE DEFENDANT: "No, I did not."

I would suggest that this exchange supports the inference that the prosecutor,
who challenges the defendant's contention that he did not receive a copy of
the extended order, was operating as if the proof of service before her was

proof of service of the extended order, an error that makes the distortion of the evidence during the prosecutor's closing argument even more significant.

Given that the outcome of the case essentially depended on whether the jury believed the complainant's or the defendant's version of events, the suggestion that the defendant was served with a copy of the extended order could very well have influenced the jury's assessment of the defendant's credibility and thus, their verdict. Indeed, this is hardly a case where there is overwhelming evidence of the defendant's guilt. See *Commonwealth* v. *Clary*, *supra* at 593; *Commonwealth* v. *Shelley*, *supra*. Contrast *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 538 (1971) (overwhelming evidence of guilt neutralizing prosecutorial misconduct). Thus, it is impossible to say that the improper argument, which undermined the defendant's credibility and went to a crucial issue in the case, did not make a difference in the jury's verdict, and I would order a new trial for the defendant. See *Commonwealth* v. *Kelly*, 417 Mass. 266, 271 (1994) (where improper argument went to police credibility, the crux of the case, new trial was necessary); *Commonwealth* v. *Clary*, *supra* at 593 (where argument of prosecutor struck at defendant's sole defense, that error contributed to conclusion that new trial was warranted); *Commonwealth* v. *Shelley*, *supra* at 470-471 (argument as to credibility of expert witness urging an inference that expert testimony was purchased "struck impermissibly, at the defendant's sole defense" and warranted a new trial).

Finally, I agree that great trust should be and is placed in the citizens who serve as jurors, for they are the foundation of our justice system. Where the evidence is distorted, however, it is unfair to those very jurors to place on them the burden of cor-

---

proof of service of the extended order. Indeed, she goes on to elicit testimony regarding what would happen to mail if left by a police officer with the defendant's brother at the 35 Groton Street address or in the mailbox.

In addition, in responding to the defendant's motion for a directed verdict, the prosecutor argued: "With regards to the . . . three counts of violations of restraining orders . . . . Judge, you have before you that is placed into evidence the service of the restraining order, that it has been left at the defendant's last and usual address, that being I believe, 35 Groton Street." I suggest that this reference to the return of service, coupled with the reference to the order in evidence, demonstrates that the prosecutor was acting as if the proof of service before the court was proof of service of the extended order.

recting or overlooking a prosecutor's mistake.[6] Indeed, a jury's verdict can be only as fair as the trial allows. I would therefore reverse the defendant's convictions and order a new trial.

---

[6] The copy of the order is confusing at best apparently because the same piece of paper was used to indicate the existence and service of both. Thus, a "cursory glance" might give the impression to the jury that the order which had been served on the defendant was the order he was charged with violating.