COMMONWEALTH *vs.* MICHAEL S. HABENSTREIT.

No. 02-P-607.

Hampshire. February 5, 2003. - April 15, 2003.

Present: DUFFLY, DREBEN, & KANTROWITZ, JJ.

*Abuse Prevention. Protective Order.*

At the trial of a complaint for violation of a protective order under G. L. c. 209A, requiring the defendant to stay away from the protected person's workplace, there was sufficient evidence of the defendant's violation of the order even though the alleged violation occurred at a time when the protected person was not at her workplace. [786-787]

COMPLAINT received and sworn to in the Northampton Division of the District Court Department on March 16, 2001.

The case was tried before *W. Michael Goggins*, J.

*Darla J. Mondou* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The question raised in this appeal is whether a defendant may be convicted of violating a protective order (G. L. c. 209A) to stay away from a protected person's workplace if the alleged violation occurred at a time when the protected person was not at her workplace. The defendant claims there was insufficient evidence of a violation and that the District Court judge should have allowed his motion for a required finding of not guilty.

Looking at the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following

facts.[1] The defendant's former girlfriend, whom we shall call Jane, had, prior to the incident, obtained a protective order under G. L. c. 209A ordering the defendant not to abuse her, not to contact her, and "to stay at least 100 yards" from her, to stay away from her residence (location stated), and "to stay away from [her] workplace located at 210 & 212 Main Street, Northampton."

Jane and the defendant had had an "off and on" relationship for about eight years, which ended in December, 2000. In the late fall of 2000, Jane began dating a coworker in her office. The defendant was aware of Jane's new relationship.

About ten persons worked in the office, and the desks of Jane and the coworker she was dating were in the same room. On February 22, 2001, Jane called the office to tell them that she was sick. She did not come to work on that day. Her coworker was in the office on February 22, and at about 4:20 P.M. in the afternoon, he heard a loud horn blowing several times. When he looked out the window he saw the defendant stopped about forty feet away in a pickup truck.[2] He knew the defendant because he had previously seen him in the office. The defendant looked at the coworker, raised himself up out of the truck window, and started shouting obscenities and making threats. The coworker subsequently called the police.

To establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge; (2) the order was in effect on the date of the alleged violation; (3) the defendant had knowledge of the order; and (4) the defendant violated the order. *Commonwealth* v. *Delaney*, 425 Mass. 587, 595-597 (1997), cert. denied, 522 U.S. 1058 (1998). *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998). *Commonwealth* v. *Silva*, 431 Mass. 401, 403 (2000). The parties stipulated that the first three requirements were satisfied.

As previously indicated, the defendant contends that he did not violate the order because Jane was not present when the al-

─────────────

[1] The defendant did not present any evidence and rested after moving for a required finding of not guilty after the presentation of the Commonwealth's case.

[2] Upon later measurement by a police officer, the distance was found to be twenty feet.

leged violation occurred. He concedes that his actions would have been a violation of the order if Jane had been present.

The defendant's reliance on *Commonwealth* v. *O'Shea*, 41 Mass. App. Ct. 115 (1996), is misplaced. There, the court specifically noted that there was no violation of the order in that case because "there was no evidence that the defendant [had come] within 100 yards of [the woman's] workplace while she was there or *that the defendant entered the area of the workplace while she was not there"* (emphasis supplied).[3] *Id.* at 118. Here, the jury were warranted in finding that the defendant knowingly shouted obscenities and made a threatening gesture to a person inside, thus intruding directly into Jane's workplace in violation of the stay-away order. That Jane was not there was a fortuitous circumstance that does not constitute a defense to the defendant's actions.

An order to stay away from a protected person's workplace puts the workplace itself off limits in order to create a safe haven for him or her at work, leaving fewer opportunities for abusive contact. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 347 (1990); *Commonwealth* v. *O'Shea*, *supra*. Not only was the order not conditioned on Jane's presence, but, as the Commonwealth points out, a protective order should not be interpreted in a manner to encourage a defendant to keep himself or herself informed about a protected person's schedule.

Since there was sufficient evidence of the defendant's violation of the order, the judgment is affirmed.

*So ordered.*

---

[3] In the *O'Shea* case, we rejected the Commonwealth's argument that the defendant violated the order because he was in the vicinity of the protected person's workplace when he walked across the street from the town hall where she worked. Holding that "vicinity" was too imprecise a term and that the defendant had to disobey the order intentionally for there to be a violation, we reversed the defendant's conviction. *Id.* at 118-119. The problem in *O'Shea* and some of the difficulties in determining entry can be avoided by ordering the person to stay a specific distance from the workplace or residence. In *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597 & n.9 (1997), cert. denied, 522 U.S. 1058 (1998), the Supreme Judicial Court held that c. 209A requires no more than that the defendant know of the pertinent parts of the order. The court declined to read any mens rea into the statute, noting that to the extent that the *O'Shea* case was inconsistent with that ruling, *O'Shea* was incorrect.