## COMMONWEALTH vs. DENNIS C. REDDY.

No. 07-P-875.

Plymouth. May 6, 2008. - May 18, 2009.

Present: BERRY, SMITH, & RUBIN, JJ.

Further appellate review granted, 454 Mass. 1109 (2009).

*Practice, Criminal,* Indictment, Dismissal, Plea, Promise by prosecutor.

A Superior Court judge erred in dismissing a habitual offender indictment on
the basis that the return of the indictment violated fundamental fairness
and due process because the defendant believed that there would be a
continuing opportunity for resolution of the underlying criminal charges
against him by pleas to a complaint in the District Court, where the record
did not reflect that the prosecutor made any promise either to refrain from
seeking felony indictments in Superior Court or to keep the District Court
case open in order for the defendant to have the continuing option of
pleading to the charges, and where, in the circumstances, the defendant's
claimed reliance on any alleged promise was not reasonable, particularly in
light of the fundamental inconsistencies and problems in the affidavit
submitted by the defendant in support of his motion to dismiss. [307-313]

INDICTMENT found and returned in the Superior Court Department on February 3, 2006.

A motion to dismiss was heard by *Jeffrey A. Locke,* J.

*Cynthia Vincent Thomas* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth, submitted a brief.

BERRY, J. The issue presented in this case is whether a Superior Court judge properly dismissed a habitual offender indictment (G. L. c. 279, § 25) on the basis that the return of the indictment violated fundamental fairness and due process because the defendant believed that there would be a continuing opportunity for resolution of the criminal charges against him by pleas to a complaint in four counts in the District Court.

The record does not reflect that the prosecutor made any promise that the Commonwealth would keep the District Court

case open in order that the defendant would have the continuing option of pleading to the charges in the District Court. There was also no prosecutorial representation that felony indictments would not be pursued by the Commonwealth. Further, notwithstanding the decision to dismiss the indictment, the Superior Court judge expressly found that there was no vindictiveness on the part of the Commonwealth in seeking the habitual offender indictment. For the reasons stated herein, we reverse the order dismissing the indictment.

1. *Procedural background.* On June 10, 2005, the defendant was arrested and charged in the District Court with breaking and entering in the nighttime, malicious destruction of property, conspiracy, and possession of a burglarious instrument. The charges arose out of a break-in at a liquor store during which the defendant absconded with approximately $100.

On July 28, 2005, the defendant proffered guilty pleas to the above four charges in the District Court. Following the prosecutor's statement of the evidence and the judge's colloquy directed to the voluntariness of the defendant's guilty pleas, the judge turned to sentencing. The change of plea form indicated that the prosecution and the defense had not agreed upon the sentences to be imposed. The prosecutor recommended sentences of two and one-half years in the house of correction to be imposed concurrently on each of the four counts in the criminal complaint. The defendant sought sentences of fifteen months to run concurrently on the four counts in the complaint, and also to run concurrently with a sentence in an unrelated Superior Court case in which the defendant was being held on a detainer for a parole violation. The judge informed the defendant that the sentences on the District Court charges could not run concurrently with the parole violation case because a sentence had not yet been imposed in that case.

The defendant and his attorney conferred, and reported back to the judge that the defendant wanted to withdraw his guilty pleas in order to resolve the pending parole violation case so that the defendant's proposed concurrent sentence structure between the two cases might be adopted by the judge in sentencing on the District Court pleas. In response to the proposed plea withdrawals, the judge informed the defendant that, if his pleas were withdrawn, a trial date would be set, and bail would not be reduced.

The judge suggested that the defendant consider having the District Court guilty pleas stand, with sentencing thereon to be postponed until the parole violation case was resolved. That was not acceptable to the defendant. However, after speaking directly with the defendant, the judge was persuaded to defer setting a trial date, and instead set a change of plea date: "What I will do is put it on for a change of plea, . . . *but it's going to be within thirty days.*"

At this point, the prosecutor and the defendant agreed to a continuance to August 16, 2005, for the change of plea hearing. However, no such plea hearing occurred on August 16, 2005. According to the defendant's affidavit, his trial counsel was ill and did not appear in District Court on that date, and the defendant was not brought into court. The case was continued until September 12, 2005, on which date, according to the defendant's pleadings, the Commonwealth provided notice that indictments would be sought. The case was continued two more times in the District Court, to November 4, 2005, and December 20, 2005. On February 3, 2006, a grand jury returned indictments against the defendant for breaking and entering in the nighttime, larceny of less than $250, possession of burglarious instruments, and being a habitual offender.[1]

On the habitual offender indictment, the defendant, if convicted, would be exposed to a mandatory twenty-year prison term. Given this heightened potential sentence, the defendant, represented by new counsel, filed a motion to dismiss the habitual offender indictment in the Superior Court.[2] The motion asserted that the indictment was subject to dismissal because "[b]y prosecuting the Defendant as a Habitual Offender, the government *has breached its promise [to allow the defendant to plead guilty in District Court],*" in violation of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The dismissal motion was accompanied by the defendant's affidavit, and an affidavit from Superior Court counsel, which attached the District Court records. In his affidavit, the defendant stated that had he been informed of the prospect of being indicted, he "would have gone forward with

---

[1]With respect to the habitual offender indictment, the defendant's prior criminal history included numerous convictions between 1973 and 1993.

[2]The defendant did not file a motion to dismiss the other indictments.

the plea hearing regardless of whose recommended sentence was imposed and regardless of whether the sentence ran concurrently with any other sentence.'"

Following a hearing on the dismissal motion, a Superior Court judge found that there was no "evidence to suggest the prosecution or the Commonwealth acted vindictively or in bad faith in any way" in returning the habitual offender indictment. However, the Superior Court judge accepted the defendant's assertion in his "affidavit that but for [the defendant's] inability to be sentenced in [the parole violation case] prior to July 28 he would have accepted a sentence [in the District Court] and had he known that the Commonwealth was contemplating or would in the future contemplate indictment, he would have accepted sentencing on July 28th." Reasoning that "the defendant had a right to rely on the opportunity to plead guilty in . . . District Court," the Superior Court judge dismissed the habitual offender indictment, citing principles of due process and fundamental fairness. We conclude that the dismissal of the indictment was error of law.

2. *Analysis.* "The touchstone for determining whether a defendant has been improperly denied the advantages he expected from a plea bargain *is whether that defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise*" (emphasis added). *Commonwealth* v. *Johnson*, 447 Mass. 1018, 1020 (2006), quoting from *Commonwealth* v. *Santiago*, 394 Mass. 25, 28 (1985). In this case, there is a threshold and critical block to reaching any such "touchstone" for the defendant's reliance on a governmental promise: there was *no* prosecutorial promise that the defendant would have a continuing right to plead guilty to the District Court charges. Nor did the prosecutor express any intent to refrain from seeking future indictments. Absent such prosecutorial promises, there was no predicate for any reasonable reliance by the defendant. As in *Commonwealth* v. *Spann*, 383 Mass. 142, 146 (1981), "[n]o commitment was given not to indict the defendant before the scheduled probable cause hearing. There was no promise on which the defendant reasonably could rely."[3]

_____

[3] The defendant cites *Commonwealth* v. *Smith*, 384 Mass. 519, 523 (1981);

That the Commonwealth was willing to resolve the criminal charges in District Court on July 28, 2005, and continue the case for a change of plea to August 16, 2005, did not constitute, and cannot reasonably be considered as constituting, a promise or binding commitment to leave the case open to some indefinite future date so that the defendant would confront only District Court criminal charges, rather than indictments in the Superior Court. The only prosecutorial representation was that the Commonwealth was willing to leave the case open in the District Court for an August 16, 2005, plea change, thereby giving the defendant sufficient time to resolve the parole violation case. But there was no change of plea on August 16, 2005, so the target date came and went, erasing that prosecutorial representation. See *Commonwealth* v. *Johnson, supra* at 1020 (where prosecutor made offer that remained open through day's end, facts did not support implied promise that offer remained open "for a reasonable time").

In addition to the lack of any prosecutorial promises, the defendant's claimed reliance is not reasonable in light of the colloquy between the defendant, his counsel, and the District Court judge at the original July 28, 2005, plea hearing. Specifically, the District Court judge informed the defendant that, upon withdrawal of his pleas, the next step would be trial, advising that the defendant was "either going to plead today or [he is] going to need to get a trial date, because I'm not going to reduce his bail. So, if he doesn't want to plead today, that's perfectly okay. He can have a trial date."

The District Court judge made perfectly clear to the defendant that she was setting time limits, expressly stating that the defendant's case would *not* be subject to further pretrial conferences, but rather would be scheduled for a trial, the only exception being one continuance for another change of plea hearing, *"but it's going to be within thirty days."* Thereafter, having been persuaded by the defendant and his counsel not to set a trial date, but rather to put the case over for a change of plea hearing for August 16, 2005, the judge directly cautioned the defendant that time was of the essence in having the parole

*Commonwealth* v. *Mr. M,* 409 Mass. 538, 542 (1990); and *Commonwealth* v. *Cruz,* 62 Mass. App. Ct. 610, 612 (2004). In none of those cases was there a prosecutorial promise.

violation case resolved, to be followed by the defendant's return to the District Court on August 16 for the change of plea hearing.[4]

All of this undermines the defendant's contentions that he did not understand that the continuance leaving the case in the District Court for a potential change of plea was only to a date certain on August 16, 2005,[5] undermines his contention that he had a reasonable basis to rely on an unexpressed prosecutorial promise that the case would remain open in the District Court beyond that date and indefinitely for potential guilty pleas, and undermines his assertion that the Commonwealth acted wrongfully in seeking indictments in the Superior Court. "Where there is no detrimental reliance and a prosecutor's offer to accept a plea is withdrawn, the defendant is left with the adequate remedy of having a trial. . . . The defendant is in no worse position than he would have been if the prosecutor had made no

---

[4]Because the rescheduled August 16, 2005, District Court plea hearing would be futile on the issue of concurrent sentencing if the parole violation case had not been disposed of, the judge emphasized that the defendant needed to resolve the parole violation case speedily and that to that end the defendant should seek a habeas order to bring the defendant before the Superior Court:

> JUDGE: "So, they need . . . you need to get yourself habed [into the Superior Court for the parole violation hearing] and I . . . . But, in the meanwhile, this case isn't going to just hang. So, we have to keep this moving along."

The defendant then stated, "Do whatever I can [inaudible] means to get in there," and referenced putting "a letter [to his probation officer] in the mail this morning," and following up the letter with a telephone call. The judge then asked for a date for a change of plea to allow time for the parole violation proceeding, and the defendant reiterated, "[I]t's probably best I get it done on my own . . . ."

[5]The record reflects that the defendant was knowledgeable concerning the status of his pending cases. During the plea hearing, the District Court judge engaged in a direct discussion with the defendant concerning the parole violation case. The parole violation involved a nineteen- to twenty-year State prison sentence, as to which the defendant had not "max[ed] out" and for which there was an outstanding prison term, an issue in the parole violation. The defendant predicted that on the parole violation, "they're going to send me back." Further, the record reflects that the defendant had familiarity with the course of proceedings and procedure in the criminal courts and, thus, would have understood that the case was continued to a date certain on August 16, 2005, for a change of plea. Cf. *Commonwealth* v. *Lombardo*, 23 Mass. App. Ct. 1006 (1987) ("At the time of the plea, the defendant was . . . familiar with the criminal justice system").

plea bargain offer at all." *Commonwealth* v. *Johnson, supra* at 1020-1021, quoting from *Commonwealth* v. *Smith*, 384 Mass. 519, 522 (1981).

The plea negotiations and court proceedings in this case with respect to a potential change of plea by the defendant occur everyday in criminal cases in courts across the Commonwealth. That a case may be resolved in the District Court by plea bargaining, and the entry of guilty pleas on criminal complaints, without the government seeking felony indictments, obviously has advantages to the prosecution and the defense. For the government, a plea bargain means that a case may be expeditiously resolved without taxing prosecutorial resources and case management is served. For the defendant, a disposition in the District Court by way of a plea bargain on a criminal complaint — rather than a felony indictment in Superior Court — may lead to a lesser sentence. However, absent prosecutorial promises — such as, but not limited to, a prosecutorial promise that charges against the defendant absolutely and irrevocably will be left for disposition in the District Court, no matter how long the case remains pending, or a prosecutorial promise that the Commonwealth will not seek indictments — plea negotiations in the District Court, such as occurred here, do not mean that the Commonwealth, not having promised a District Court disposition, will nonetheless be bound and locked into a District Court disposition and barred from seeking indictments. To impose such a stricture would "unnecessarily restrict the plea bargaining process," as it continually unfolds in our District Courts. *Commonwealth* v. *Smith, supra* at 522.

Further negating any reasonable reliance by the defendant is the fact that, in the initial plea appearance on July 28, 2005, the District Court judge proposed to the defendant a means immediately to address the potential concurrent sentencing issue presented by the parole violation case. Specifically, the judge suggested to the defendant that the District Court sentencing could be postponed until after the defendant's parole violation matter was resolved in the Superior Court. This procedure would have preserved the defendant's District Court pleas, but the defendant rejected that alternative. This rejection belies the averment in the defendant's affidavit that, "[i]f I had known that my ability to

plead guilty would be forfeit after July 28, 2005, I would have gone forward with the plea hearing regardless of whose recommended sentence was imposed and regardless of whether the sentence ran concurrently with any other sentences." (The rejection also undercuts one of the Superior Court judge's stated justifications for allowing the motion to dismiss the habitual offender indictment. That is to say, the Superior Court judge accepted and relied upon this averment by the defendant about a willingness to plead guilty in July, 2005, regardless of the sentencing issue in the parole violation case. As noted above, this is not supported by the record.)

In his affidavit in support of the dismissal of the habitual offender indictment, the defendant states that subsequent to his appearance at the July 28, 2005, District Court hearing wherein he initially proffered, then withdrew, his guilty pleas, he was "never brought back into Court to complete the process of tendering a plea on" the District Court charges. There are fundamental inconsistencies and problems with this affidavit representation by the defendant. First, the representation is inconsistent with the District Court docket, which shows that a mittimus issued for the defendant to be brought to court for the August 16, 2005, rescheduled change of plea hearing, as well as for the subsequent continuances on September 12, 2005, November 3, 2005, and December 20, 2005. Second, no affidavit was filed from District Court counsel that might lend credence to the defendant's representation. Third, the affidavit of successor Superior Court counsel, who filed the motion to dismiss the habitual offender indictment, does not reference that the defendant was not brought back to the District Court, does not state that any inquiry was pursued with predecessor counsel to determine what transpired in the District Court, and provides no countervailing information concerning the mittimus references in the docket.

The docket entries have a presumption of regularity, unless rebutted by the defendant. "The presumption of regularity and the policy of finality thus come into play . . . to place on the defendant the requirement of showing some basis that adequately supports a negation of his convictions." *Commonwealth* v. *Grant*, 426 Mass. 667, 671 (1998). The defendant has not rebutted this

presumption of regularity reflected in the District Court docket. "A defendant's 'self-serving affidavits and assertions are not sufficient, on their own, to raise a substantial issue.' *Commonwealth* v. *Scoggins*, 439 Mass. 571, 578 (2003)." *Commonwealth* v. *Denis*, 442 Mass. 617, 633-634 (2004).

Apart from these deficiencies, there is an additional, independent reason why the defendant's claim fails. Even assuming that the defendant was not brought to the District Court on the mittimus for the August 16, 2005, change of plea hearing, the defendant was on notice that he had pending District Court charges, as to which he had informed the District Court judge at the July 28, 2005, hearing that he would enter guilty pleas, and the defendant was on notice from the District Court judge's statement that such a change of plea or trial was to be held expeditiously, indeed within thirty days. The Commonwealth did not return the Superior Court indictments until close to six months later, on February 3, 2006. Yet, from all that appears of record, the defendant and his counsel did nothing to have his District Court case brought forward, and the defendant has offered no explanation for his failure to do so. A defendant has some responsibility for moving his case forward, particularly where, as here, it is the defendant who is complaining about a delay in the course of court processes, which the defendant contends affected the course of the prosecution against him.

Finally, the defendant seeks dismissal of the Superior Court indictment, but dismissal is not called for where a defendant is at least partially responsible for the flaw being challenged. "While the primary obligation to bring the case to trial within the statutory period [or other disposition] rests with the Commonwealth, 'primary' does not mean 'sole.' " *Commonwealth* v. *Lynch*, 70 Mass. App. Ct. 22, 27 (2007). "The goal of providing defendants with speedy trials [or here, a plea to District Court charges] can be obtained only if the rule is interpreted to place certain obligations on all parties, including prosecutors, the trial courts, and defendants. If the rule is read to relieve defendants of the obligation to press their case through the criminal justice system [here, through entry of pleas in the District Court], the public interest often will be thwarted by those . . . who decide that delay is the best defense tactic." *Barry* v. *Commonwealth*, 390 Mass. 285, 296-297 (1983).

3. *Conclusion.* Given the foregoing, the defendant's claim of reliance lacks reasonableness. Since there was no prosecutorial promise either to leave the District Court case open beyond the scheduled August 16, 2005, change of plea, or not to seek indictments, the dismissal of the habitual offender indictment was error. The order allowing the motion to dismiss indictment no. 06-00052-002 (habitual offender) is reversed, and the matter is remanded to the Superior Court for further proceedings.

*So ordered.*