NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-623                                       Appeals Court

COMMONWEALTH  vs.  GEOFFREY F. WATSON.

No. 17-P-623.

Suffolk.     February 16, 2018. - October 17, 2018.

Present:  Wolohojian, Milkey, & Englander, JJ.

Abuse Prevention.  Protective Order.  Notice.  Constitutional
    Law, Confrontation of witnesses.  Practice, Criminal,
    Confrontation of witnesses.  Words, "Stay away."

    Complaint received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on September 22, 2015.

    The case was heard by David Weingarten, J.

    Kevin P. DeMello for the defendant.
    Ioana Moldovan (Helle Sachse, Assistant District Attorney,
also present) for the Commonwealth.

    ENGLANDER, J.  After a jury-waived trial in Boston

Municipal Court, the defendant was convicted of violating that

portion of an abuse prevention order that required him to "stay

away from the plaintiff's residence."  On appeal, the defendant

argues, among other things, that the evidence was insufficient

to support a guilty finding, because there was no evidence that he entered the property on which the residence was located, or otherwise intruded on it.  Although it is true that the defendant did not cross the property boundary or otherwise physically intrude onto the property, we conclude that the evidence was nonetheless sufficient to prove beyond a reasonable doubt that he failed to "stay away" from the residence.  We reach this conclusion because the phrase "stay away," although tethered to specific premises, is not limited solely to physical intrusion on them.  On this basis, and because we conclude that the defendant's remaining arguments are without merit, we affirm.

Background.  On August 25, 2015, E.C. obtained an ex parte abuse protection order against the defendant that subsequently was extended.  The operative terms of the order are set forth in three numbered paragraphs.  Paragraph 1 ordered the defendant "NOT TO ABUSE [E.C.] by harming, threatening or attempting to harm [her] physically or by placing [her] in fear of imminent serious physical harm, or by using force, threat or duress to make [her] engage in sexual relations."  Paragraph 2 included two prohibitions.  First, it ordered the defendant "NOT TO CONTACT [E.C.], in person, by telephone, in writing, electronically or otherwise, either directly or through someone else."  Second, it ordered the defendant "to stay at least 100 yards away from [E.C.]."  Finally, paragraph 3 ordered the

defendant "TO IMMEDIATELY LEAVE AND STAY AWAY FROM [E.C.'s] RESIDENCE, except as permitted in [two subsequent paragraphs that do not apply], located at [a specified street address]." Because E.C. lived in a multifamily dwelling, the order went on to specify that the defendant was required "to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which [her] residence is located."[1]

As the parties informed the judge at the commencement of the trial, the Commonwealth made no contention that the defendant had violated paragraphs 1 and 2 of the order, that is, by abusing, contacting, or coming within one hundred yards of E.C. Instead, the Commonwealth's sole contention was that the defendant violated paragraph 3 of the order by not staying "away from the entire apartment building . . . in which [E.C.'s] residence was located."

E.C. did not testify at trial. The Commonwealth's sole witness was a police officer who drove to E.C.'s address at approximately 10:30 A.M. on September 22, 2015, in response to a "radio call." Other than the fact that the officer learned of

---

[1] Paragraph 3 also required the defendant "(a) to surrender any keys to [the] residence to the [p]olice; (b) not to damage any belongings of [E.C.] or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to [E.C.]; and (d) not to interfere in any way with [E.C.'s] right to possess that residence, except by appropriate legal proceedings." These additional requirements are not implicated in this case.

E.C.'s address from the radio call, virtually nothing about the content of that call was admitted in evidence.[2]

After the officer received the radio call, he arrived at E.C.'s address "within [five] minutes may be."  Once there, he observed the defendant standing on the sidewalk outside the property.  He was with other individuals, "like a group of friends talking."  Separating the sidewalk from the property on which the building was located was a wrought iron fence that was "about knee high."  At no point did the officer see the defendant inside the fence, or on the walkway or stairs leading to the building.  According to the officer, the point on the sidewalk on which the defendant was standing was approximately twenty to twenty-five feet from the front door of the apartment building in which E.C. lived.[3]

At the close of the evidence, the defendant moved for a required finding of not guilty, arguing, among other things, that there was no evidence that he violated the requirement that he stay away from E.C.'s residence, and that that provision was

---

[2] The officer was allowed to testify that the call provided him a description of a man in a plaid shirt, although this was admitted for the sole purpose of explaining why the officer approached the defendant when he arrived at the scene.

[3] On cross-examination, the officer stated that he believed the defendant was "about [twenty-five] to [thirty] feet" away from the front door.  Whether the defendant was twenty to twenty-five feet away, or twenty-five to thirty feet away, is not material.

void for vagueness. Acknowledging that the order did not require the defendant to stay a particular distance away from the residence, the prosecutor argued that the judge could infer that the defendant was required to stay a "reasonable" distance away. She also suggested that a reasonable distance would be one hundred yards (to make it congruent with the express requirement of the order that the defendant stay one hundred yards away from E.C.).

The judge rejected the Commonwealth's argument that the order required the defendant to stay one hundred yards away from the residence, and he indicated that he thought the defendant's argument had some force. Nevertheless, the judge ultimately found the evidence sufficient, stating his view that "as a matter of law," being twenty-five feet away from the building -- which the judge characterized as "just on the outside of the property" -- was enough.

Discussion. 1. Sufficiency of the evidence. In reviewing the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). Here, what the evidence showed is not in material dispute. Rather, the

determinative question is whether that evidence established that the defendant violated the requirement that he stay away from E.C.'s residence, which the order stated included "the entire apartment building" in which her residence was located.

We do not write on a clean slate. We first addressed what it means to be required to "stay away from" an identified residence or workplace more than two decades ago. See Commonwealth v. O'Shea, 41 Mass. App. Ct. 115, 116 (1996). There, an individual had obtained a G. L. c. 209A order requiring that the defendant stay away from her workplace. The defendant was charged with violating that provision after he had been observed going into and out of a commercial establishment separated by a side street from the property on which her place of work was located. Id. at 117. We rejected the defendant's contention that the scope of the requirement was limited to the building in question. Instead, we concluded that it "extends to all of the property on which the workplace is located[,] including the adjacent parking lot." Id. at 118. We noted that this interpretation "create[s] a safe haven for [the protected person] at her workplace, a place 'in which no further abuse need be feared.'" Id., quoting Commonwealth v. Gordon, 407 Mass. 340, 347 (1990).

At the same time, in O'Shea, we also rejected the Commonwealth's argument that being in the mere "vicinity" of the workplace was enough.  As we explained,

> "The word 'vicinity,' according to Black's Law Dictionary (6th ed. 1990), means, 'Quality or state of being near, or not remote; nearness; propinquity; proximity; a region about, near or adjacent . . . .'  The word is so imprecise that if we hold that the 'stay away' order means stay away from the 'vicinity' of the workplace, the order would fail to meet the requirement that it must be clear."

O'Shea, 41 Mass. App. Ct. at 118.  Since the defendant in O'Shea had not "entered the area of the workplace," id., we concluded that he therefore could not be found guilty of violating the order.  Id. at 118-119.[4]

In Commonwealth v. Habenstreit, 57 Mass. App. Ct. 785, 787 & n.3 (2003), the defendant did not enter the workplace from which he was required to stay away.  However, after stopping his

---

[4] In O'Shea, 41 Mass. App. Ct. at 118, we commented that someone charged with violating a G. L. c. 209A order not only must be aware of the order's existence but also must have "clearly and intentionally disobeyed that order in circumstances in which he was able to obey it."  The Supreme Judicial Court subsequently abrogated that pronouncement.  See Commonwealth v. Delaney, 425 Mass. 587, 597 n.9 (1997), cert. denied, 522 U.S. 1058 (1998).  As that court held, one can violate an order issued pursuant to G. L. c. 209A without specifically intending to do so, because that statute "requires no more knowledge than that the defendant knew of the order."  Id. at 596.  However, O'Shea otherwise remains good law on the proposition that one generally cannot be convicted for having violated an order merely by being in the vicinity of the property on which the protected residence is located.  See Commonwealth v. Habenstreit, 57 Mass. App. Ct. 785, 787 & n.3 (2003) (citing O'Shea post-Delaney).

truck twenty to forty feet away from the workplace, he honked his horn, shouted obscenities, and made a threatening gesture to those in the workplace. Id. at 786. Concluding that, in this manner, the defendant had directly intruded into the workplace, we held that he could be found guilty of violating a stay-away order even though he had not crossed the property boundary. Id. at 787.

Taken together, O'Shea and Habenstreit thus recognize two ways that someone can violate an order to stay away from a workplace or residence: (1) entering the property on which the workplace or residence is located, or (2) taking actions that directly intrude on the workplace or residence. Intrusion in the latter situation does not require physical encroachment on the property. Rather, it is sufficient to take actions in close proximity to the property that have a direct impact inside the property identified in the stay-away order.

In the case before us, the Commonwealth presented no evidence that the defendant violated the order in either of these two ways: there is nothing to suggest that he went onto the property on which E.C.'s apartment building was located, and there is no evidence that he was doing anything outside that property other than talking with friends. The question then is whether O'Shea and Habenstreit establish the only circumstances under which a defendant can be found to have violated a stay-

away order, or whether the phrase "stay away from the plaintiff's residence" also encompasses some other circumstances.

The word "away" denotes distance -- a distance the defendant must be "from the residence," but the word "away" does not give rise to a boundary that is mathematically precise.[5] Instead, mindful of the purpose of this aspect of c. 209A orders, we conclude that a defendant may also be found to have failed to "stay away" where, although outside the property boundary, he nonetheless has positioned himself sufficiently proximate to it that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it.[6] See Commonwealth v. Goldman, 94 Mass. App. Ct.   ,    (2018); Commonwealth v. Telcinord, 94 Mass. App. Ct.   ,    (2018). Compare State v. Williams, 226 N.C. App. 393, 410 (2013) ("Certainly the order must mean that defendant could not be so close . . . that he would be able to observe her, speak to her, or intimidate her in any way"). We

_____

[5] In this case we are construing the c. 209A order, which requires the defendant to "stay away from the plaintiff's residence." The statute, c. 209A, uses the term "remain away." For purposes of construing "away" we perceive no difference between the terms.

[6] The plaintiff need not be present for a violation to occur. We use the terms "abuse" and "contact" as they are already defined in the order and the case law.

reach this conclusion based not only on the common understanding of the phrase "stay away" but also on its meaning within the specific framework and design of the abuse prevention order -- to provide a "safe haven" "in which no further abuse need be feared." Gordon, 407 Mass. at 347. O'Shea, 41 Mass. App. Ct. at 118. We would fail to serve this basic purpose were we to adopt a standard that allowed a defendant to position him or herself immediately outside the property boundary, or to stand in the plaintiff's path, such that the plaintiff was fearful to leave or return home.[7] The standard we have articulated has limits; it continues to be tethered to the property boundary, and to places proximate to it.[8] Cf. Commonwealth v. Forbes, 86 Mass. App. Ct. 197, 201 (2014) (rejecting textual interpretation that encompassed "a mathematical precision that was never intended"). The standard thus fulfils the purpose of the statute, while still providing a defendant fair notice of what conduct would violate the order. See, e.g., Commonwealth v.

---

[7] We recognize that the problem is partially ameliorated by the existence of the other provisions in abuse prevention orders prohibiting a defendant from abusing, contacting, or coming within a specific distance of the protected party. However, as a practical matter, enforcing those provisions typically requires the testimony of domestic abuse victims, who are often reluctant to face their abusers.

[8] The standard accordingly is consistent with our holding in O'Shea, that merely being in the "vicinity" of the premises is not sufficient to violate the "stay-away" provision.

McGhee, 472 Mass. 405, 414 (2015) (judicial construction can alleviate vagueness concerns).

We turn then to applying that standard here. As noted, the defendant had placed himself immediately outside the property boundary and was there long enough to be observed by the person who called the police, and the defendant remained there until the officer arrived five minutes later. This evidence was sufficient to allow the judge to find that the defendant positioned himself sufficiently proximate to the protected party's residence that he would have been able to contact or to abuse her. There accordingly was sufficient evidence to find a violation of the order.[9]

2. The notice issue. The defendant next argues that the Commonwealth failed to prove that he had notice of the c. 209A order prior to his violation of it on September 22, 2015. The relevant facts are that the order was initially entered ex parte on August 25, 2015, and the court scheduled an extension hearing for September 4, 2015. There were several efforts to serve the defendant with the temporary order at his home address over the

---

[9] We also reject the defendant's contention that the order was unconstitutionally vague as applied to the facts here, because it did not give him sufficient notice that his conduct was prohibited. The words "stay away" gave sufficiently clear notice that the defendant could not stand immediately outside the property boundary. See Commonwealth v. Coppinger, 86 Mass. App. Ct. 234, 239 (2014); Commonwealth v. Forbes, 86 Mass. App. Ct. at 201.

several days between August 25 and September 4, none of which succeeded. The hearing went forward on September 4, 2015, without the defendant present, at which the order was extended until September 2, 2016.

The defendant was thereafter served in hand while present in court on September 11, 2015. This service was established at trial by the court's docket sheet, which showed that the defendant was served with a copy of the c. 209A order by a court officer, in the court house.

The defendant claims that the docket sheet was inadequate evidence of service, and that in any event reliance upon it to prove notice violated the confrontation clause. We disagree. Our cases establish that a court may take judicial notice of its docket sheet, and that the docket sheet is prima facie evidence of the events recorded therein. See, e.g., Jarosz v. Palmer, 436 Mass. 526, 530 (2002); Commonwealth v. Reddy, 74 Mass. App. Ct. 304, 311 (2009); Commonwealth v. Podoprigora, 46 Mass. App. Ct. 928, 929 (1999). See also Brodin & Avery, Massachusetts Evidence § 2.8.1 (2018). As such, it is prima facie evidence that the defendant was served with the c. 209A order on September 11, 2015.

Moreover, there is no confrontation clause problem in relying on the docket sheet to prove notice here. Just recently, in Commonwealth v. McEvoy, 93 Mass. App. Ct. 308, 311-

312 (2018), we explained that the Commonwealth could rely on the records of the registry of motor vehicles to establish that a criminal defendant had received notice that his driver's license had been suspended. We explained that the registry records were not "testimonial," for confrontation clause purposes, because the records were "maintained in the normal course of business," and because the records were created with "no particular prosecutorial use in mind." Id. at 315-316 (quotation omitted). The same is true of the docket sheet here, which is maintained in the normal course of court business. See Commonwealth v. Shangkuan, 78 Mass. App. Ct. 827, 831-836 (2011) (return of service evidencing service on defendant out-of-State was properly admitted in c. 209A case). Notably, in concluding that there was no confrontation clause violation, the McEvoy court also rejected the argument, raised here as well, that the government record could not be used to prove notice where notice was "an element of the offense." McEvoy, supra at 316 & n.6. Likewise, here, the use of a nontestimonial government record for purposes of proving notice to the defendant was acceptable.[10]

---

[10] In McEvoy, 93 Mass. App. Ct. at 316, this court assumed, without deciding, that notice of the license suspension was an element of the offense. In light of the holding in McEvoy, we similarly do not decide whether notice qualifies as an "element" here.

Finally, the defendant raises a related argument -- that the c. 209A order itself was not valid because he did not receive proper notice and an opportunity to be heard before it issued. It is true that the Commonwealth did not prove that the defendant had received notice prior to the issuance of either the August 25, 2015, or the September 4, 2015, order. The case law establishes, however, that a conviction of violation of a c. 209A order is valid as long as the defendant received actual notice of the order prior to the alleged violation. See Commonwealth v. Delaney, 425 Mass. 587, 591-593 (1997), cert. denied, 522 U.S. 1058 (1988) (defendant had actual knowledge of order, and opportunity to have order vacated, prior to time of violation). See also Commonwealth v. Melton, 77 Mass. App. Ct. 552, 556 (2010) (actual notice of order and its terms, provided during telephone conversation, was sufficient to support conviction). Here the defendant received actual notice of the order on September 11, 2015, eleven days before he violated it. He had the opportunity to seek to have the order vacated during that time. The defendant's reliance on Commonwealth v. Welch, 58 Mass. App. Ct. 408, 409-410 (2003), is accordingly misplaced, because in that case the defendant did not receive notice of the

order at any time before the alleged violation occurred.[11]  There

was no due process violation on the facts here.[12]

Judgment affirmed.

---

[11] The defendant argues that an extended c. 209A order is automatically invalid if the defendant did not receive notice of the hearing during the period (usually ten days) between the issuance of the temporary order and the hearing on whether to extend the order.  No case so holds.

[12] There is no merit to the defendant's contention that the Commonwealth failed to prove that he was the same Geoffrey Watson named in the c. 209A order.  The testimony of Officer Stephen McKunes had a proper foundation in personal knowledge, and was sufficient to establish that while being booked the defendant himself had provided the information from which his identity could be confirmed -- including his home address.  See Commonwealth v. Doe, 8 Mass. App. Ct. 297, 299 (1979).