NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1741                                        Appeals Court

COMMONWEALTH  vs.  SAUL B. GOLDMAN.


No. 16-P-1741.

Middlesex.     December 11, 2017. - October 17, 2018.

Present:  Agnes, Sacks, & Lemire, JJ.


Harassment Prevention.  Protective Order.  Practice, Criminal,
    Instructions to jury.  Probable Cause.  Words, "Remain
    away."



    Complaint received and sworn to in the Lowell Division of
the District Court Department on February 23, 2015.

    A motion to dismiss was heard by Michael J. Brooks, J., and
the case was tried before Daniel C. Crane, J.


    Christopher DeMayo for the defendant.
    Asher Kim, Assistant District Attorney, for the
Commonwealth.


    SACKS, J.  The defendant was convicted of violating the

provisions of two G. L. c. 258E harassment prevention orders

that required him to "remain away from [the protected persons']

residence."  On appeal, the defendant argues that the remain-

away provision was misinterpreted, both by a motion judge in

refusing to dismiss the complaint for lack of probable cause, and by the trial judge in responding to a jury question about the provision.

We conclude that ordinarily, the remain-away provision of a c. 258E order prohibits a defendant from (1) crossing the residence's property line, (2) engaging in conduct that intrudes directly into the residence, and (3) coming within sufficient proximity to the property line that he would be able to abuse, contact, or harass a protected person if that person were on the property or entering or leaving it.  A protected person need not actually be present for such a violation of the order to occur.[1]

Applying these standards here, we conclude that there was probable cause to issue the complaint, but that it was an abuse of discretion for the trial judge to instruct the jury, in response to their request to explain the remain-away provision, that they should give the phrase its "plain meaning," using their common sense and life experiences.  The defendant is therefore entitled to a new trial.

Background.  The defendant had been a member of the Montefiore Society Synagogue, a small congregation located in Lowell, since at least 2007.  After the defendant's conduct at

_____

[1] In two other cases decided today, we reach a similar interpretation of the stay-away provision in a typical G. L. c. 209A abuse prevention order.  See Commonwealth v. Telcinord, 94 Mass. App. Ct.    (2018); Commonwealth v. Watson, 94 Mass. App. Ct.    (2018).

the synagogue led to disputes between him and John and Mary Smith (pseudonyms) -- a husband and wife who held leadership positions in the congregation -- the Smiths obtained essentially identical c. 258E orders against the defendant in 2011. The orders, issued on the Trial Court's preprinted forms, originally required the defendant not to abuse or harass the Smiths, not to contact them, to stay at least one hundred yards away from them, and to "remain away from [their] residence located at" a specified address in Lowell.[2] The defendant also lived in a house in Lowell, and he owned a rental property in Lowell, not far from the Smiths' residence.

The orders were extended in 2012 and 2013; they were extended again in 2014, with the modification that the defendant was no longer required to remain one hundred yards away from the Smiths or to refrain from contacting them. The orders were extended yet again in 2015, with the further modification that the defendant could "attend services at the synagogue . . . respectfully and not abuse" the Smiths.

Shortly thereafter, a large snowstorm having been forecast for Saturday, February 21, 2015, the Smiths invited members of the synagogue to spend the night of February 20 at the Smith residence, so that services could be conducted at the residence

---

[2] The remain-away provision appears next to a checkbox numbered "3" on the preprinted form.

the following day without members having to travel outdoors. About fourteen members accepted. The defendant was not invited.

There was conflicting evidence about what occurred during services the next morning. The Commonwealth's case included evidence that John Smith looked out his living room window and noticed the defendant walking along the street within thirty to forty feet of the Smiths' property. He asked his wife to call the police. She then looked out another window, saw the defendant walking up their driveway, and called 911. A police officer arrived a few minutes later and observed the defendant standing in front of the Smiths' house. The officer spoke to the Smiths and then arrested the defendant for violating the c. 258E orders.

The defendant told a different story. He testified that he had walked to the synagogue that morning but, finding no one there, walked in the direction of his rental property to speak to his tenants. Because the Smiths lived nearby, he also walked toward their residence, to see "if they did their service there so that I wouldn't be able to come." The defendant testified that he wanted to see whether there were cars at the Smiths' residence, and that he came no closer than an intersection that, according to a map admitted in evidence, was one and one-half blocks from the Smiths' residence. He denied that he went to the Smiths' house or onto their driveway.

After the defense rested, the judge informed the Commonwealth and defense counsel that, as to the meaning of "staying away from the residence . . . I can anticipate that the jury could have a question about that," and that he intended his instruction to "leave it as [']remain away from the residence['] and it will be up to the jurors to decide what that means." This was the central issue in the case. Both closing arguments focused solely on whether the defendant had violated the "remain away from the . . . residence" provisions of the orders. The judge's final charge stated the pertinent element of the offenses as whether the defendant had violated the orders "by failing to stay away from a particular address."

As the judge had predicted, during their deliberations, the jury sent a note asking, "Is there further definition/ specification available for what it means to 'remain away from the plaintiff's residence' . . .? Does it mean to stay off property . . . or a certain distance away . . . or nowhere in vicinity, etc.?" The prosecutor proposed that the judge answer by instructing that the phrase had "no strict definition" and that the jury should consider "the plain meaning of what it is to 'stay away' from a given location, using [their] common sense and life experiences." Defense counsel objected, arguing that the phrase was ambiguous and vague, that the ambiguity was required to be resolved in the defendant's favor, and

accordingly that "residence means residence.  Was he in the residence [or] was he not in the residence is really the question."

The judge chose to give the Commonwealth's proposed answer, and thus he instructed the jury:

> "[T]he term stay away has no strict definition for you to consider; instead, you are to assess the term by the plain meaning by what it is to stay away from a given location using your common sense and life experiences.  You may consider the credible facts and the credible evidence and circumstances of this case as you find them to determine whether or not the defendant's actions complied with the stay-away order."

The jury then returned guilty verdicts on both charges.

Discussion.  Because the meaning of the remain-away provision is examined most productively in the context of the judge's response to the jury question, we begin with that issue. We then return to the question whether there was probable cause to issue the complaint.[3]

---

[3] We reject the defendant's third argument:  that the complaint should have been dismissed based on a 2007 rabbinical court ruling in a dispute between himself and John Smith.  That ruling recited the parties' agreement to submit to the rabbinical court's jurisdiction and be bound by its decision. It then stated that the defendant could return to the synagogue for all prayers (a privilege that could be revoked for uncivil behavior) and that all future claims of trespassing would be addressed to that court.  Whatever the effect of that ruling on matters involving conduct at the synagogue, it did not deprive the courts of the Commonwealth of jurisdiction to issue and enforce G. L. c. 258E orders requiring the defendant to remain away from the Smiths' residence.

1.  Response to jury question.  "The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly."  Commonwealth v. Waite, 422 Mass. 792, 807 n.11 (1996).  But that discretion is not unlimited.  "The alertness of the jury in this situation was impressive, and, unless for some particular reason it would be unfair to do so, the judge was obligated to respond with an accurate statement of the law."  Commonwealth v. Thomas, 21 Mass. App. Ct. 183, 186 (1985).  "When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."  Id., quoting Bollenbach v. United States, 326 U.S. 607, 612-613 (1946).  See Commonwealth v. Leahy, 445 Mass. 481, 501 (2005).

Here, although there is little appellate authority on the meaning of a remain-away provision, there was a clear answer to that part of the jury's question asking whether the phrase meant "nowhere in [the] vicinity."  We have held, in the context of a stay-away provision of a G. L. c. 209A abuse prevention order,[4] that:

> "The word 'vicinity,' according to Black's Law Dictionary
> (6th ed. 1990), means, 'Quality or state of being near, or

_____

[4] "[F]or the most part, both the Supreme Judicial Court and this court have applied the case law relating to c. 209A to cases arising under c. 258E."  A.P. v. M.T., 92 Mass. App. Ct. 156, 161 (2017).

not remote; nearness; propinquity; proximity; a region about, near or adjacent . . . .' The word is so imprecise that if we hold that the 'stay away' order means stay away from the 'vicinity' of the workplace, the order would fail to meet the requirement that it must be clear."

Commonwealth v. O'Shea, 41 Mass. App. Ct. 115, 118 (1996), overruled on other grounds, Commonwealth v. Delaney, 425 Mass. 587, 597 n.9 (1997), cert. denied, 522 U.S. 1058 (1998). The jury here thus should have been instructed that they could not convict the defendant based solely on a finding that he was in the vicinity of the protected residence.

O'Shea also provides guidance on another possible meaning of "remain away" identified by the jury: "to stay off [the] property." Although decided in the context of a stay-away order listing a workplace rather than a residence, O'Shea makes clear that such an order is not limited to the building the address of which is listed on the order, but extends at least to the property line. O'Shea, 41 Mass. App. Ct. at 116, 118. "[T]he 'stay away' order is not limited to preventing the defendant from merely entering the town hall itself ([the protected person's] workplace). Rather, such an order . . . extends to all of the property on which the workplace is located[,] including the adjacent parking lot." Id. at 118. This interpretation "create[s] a safe haven for [the protected person] at her workplace, a place 'in which no further abuse

need be feared . . . ." Id., quoting Commonwealth v. Gordon, 407 Mass. 340, 347 (1990).[5]

Nor does O'Shea establish the outer limit of the meaning of "stay away" or "remain away." We subsequently held that a defendant violated a c. 209A stay-away order by stopping his truck twenty to forty feet away from the protected person's workplace, honking his horn, shouting obscenities, and making a threatening gesture. Commonwealth v. Habenstreit, 57 Mass. App. Ct. 785, 786 & n.2, 787 (2003). Such conduct "intrud[ed] directly into [the] workplace in violation of the stay-away order," notwithstanding that the protected person was not present at the time. Id. at 787. To interpret a stay-away order as permitting such intrusive conduct as long as it was committed outside (or even some distance from) the property line would contravene the prophylactic purpose of a stay-away order: "to create a safe haven . . . , leaving fewer opportunities for abusive contact." Id. Further illustrating this prophylactic purpose, a stay-away order applies even when the protected person is not present, so as to avoid "encourag[ing] a defendant

---

[5] This interpretation also gives meaning to the statutory language authorizing the court to order the defendant to remain "away from" a protected person's residence or workplace (emphasis added), see G. L. c. 209A, § 3 (c); G. L. c. 258E, § 3 (a) (iii), and the corresponding language in c. 209A and c. 258E orders. Such language does more than require a defendant merely to remain "out of" the building that constitutes the residence or workplace. "Away from" has a broader meaning.

to keep himself or herself informed about a protected person's schedule."  Id.

In the context of a c. 258E order, we think this protective purpose is best served by interpreting the remain-away provision so as to reduce the opportunities for conduct that violates the other provisions of the order.  The typical c. 258E order issued on the preprinted form requires the defendant, among other things, not to "abuse," "harass," or "contact" the protected person, and each of those terms typically is further defined in the body of the order itself.  We therefore conclude that, if no distance is specified, the remain-away provision of a typical c. 258E order prohibits the defendant from (1) crossing the residence's property line, (2) engaging in conduct that intrudes directly into the residence, and (3) coming within sufficient proximity to the property line that he would be able to abuse, contact, or harass a protected person if that person were on the property or entering or leaving it.  A protected person need not actually be present for such a violation of the order to occur.

This standard both furthers the purpose of c. 258E and addresses the defendant's due process concerns by providing meaningful guidance to defendants and to law enforcement authorities.  As in the context of c. 209A orders, "[d]ue process requires clarity of expression with the purpose of giving a person of ordinary intelligence a reasonable

opportunity to know what the order prohibit[s], so that he might act accordingly; and with the further purpose of enabling a putative enforcer of the order to apply it without discrimination." Commonwealth v. Butler, 40 Mass. App. Ct. 906, 907 (1996). See Delaney, 425 Mass. at 592.

But we reject the defendant's argument that vagueness concerns require a bright-line rule under which the protection of the remain-away provision stops at the property line. A provision is not impermissibly vague "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard." Commonwealth v. McGhee, 472 Mass. 405, 414 (2015), quoting Commonwealth v. Orlando, 371 Mass. 732, 734 (1977). "A sufficiently definite warning may be achieved by judicial construction . . . ." Commonwealth v. Gallant, 373 Mass. 577, 581 (1977).

Two caveats are in order. First, not all parts of the standard we have identified will necessarily apply in every case, because, as this case illustrates, not every c. 258E order prohibits the same conduct. The orders here prohibited the defendant from abusing or harassing the protected persons, but not from contacting them. Thus it might have confused the jury to mention "contact" in explaining the circumstances under which the defendant's proximity to the property line would violate the

remain-away provision.[6]  Conversely, other c. 258E orders may include prohibitions in addition to those against abuse, contact, or harassment.  Depending on the nature of such an additional prohibition, it may be that a defendant violates the remain-away provision if his proximity to the property line would enable him to violate that prohibition if the protected person were on the property or entering or leaving it.  We leave such issues for another day.

Second, as we have previously recognized, "some of the difficulties in determining [violations of remain-away orders] can be avoided by ordering the person to stay a specific distance from the workplace or residence."  Habenstreit, 57 Mass. App. Ct. at 787 n.3.  A judge issuing a c. 258E order need not leave it to the parties in the first instance to apply the new standard we identify here to determine the meaning of "remain away."  Instead, the judge may specify in the text of the order a particular distance that the defendant must remain away from the property line or from any specified portion of the property.  Such a specified distance may be added or altered

---

[6] Tailoring an instruction to avoid jury confusion may have little or no effect on the practical scope of the protection offered by a remain-away provision.  A defendant close enough to contact a protected person (were she present on, entering, or leaving the property) might, in practice, also be close enough to engage in abuse or harassment, which may be accomplished by verbal acts alone, and such proximity would violate the remain-away provision.

(or, for that matter, deleted) based on the facts and in light of experience in a particular case.  The judge's goal should be to make an order that shields the protected party from the risk of future harassment, abuse, or contact, as the case may be.  The greater the precision with which the remain-away area can be identified, the greater the likelihood that a defendant, and law enforcement authorities, will know what is and what is not a violation.

Returning to the case before us, we conclude that the judge's answer to the jury's question -- that they should give the remain-away provision its "plain meaning," using their common sense and life experiences -- did not adequately inform the jury about the meaning of that provision.  Cf. Commonwealth v. Raymond, 54 Mass. App. Ct. 488, 494 (2002) (instruction inadequate where it "left the jury without guidance as to what constituted a violation" of c. 209A no-contact order).  To accept the judge's answer would leave each defendant to guess at the interpretation of the remain-away provision -- a term of a court order -- and make that interpretation a subjective judgment call for the jury.

The jury asked, among other things, whether presence anywhere in the "vicinity" of the Smiths' residence would constitute a violation; the correct answer -- no -- was not given.  See O'Shea, 41 Mass. App. Ct. at 118.  There was

testimony that the defendant had gone onto the Smiths' property, but there was also the defendant's testimony that he had come no closer than a point one and one-half blocks from the Smiths' house.  We cannot know which testimony the jury believed.  If the jury believed the defendant, they could still have convicted him based on the instructions they received.  We cannot know whether, if properly instructed, they would have found that from such a location the defendant would have been able to harass or abuse either of the Smiths had they been on, entering, or leaving their property.[7]  Accordingly, the defendant is entitled to a new trial.

2. Denial of motion to dismiss complaint.  We must also determine whether the motion judge properly denied the defendant's motion to dismiss the complaint for lack of probable

---

[7] It appears undisputed that the Smiths were on the property at the relevant time, and nothing we say is intended to restrict trial judges' usual discretion to tailor their instructions in such situations, e.g., to refer where helpful to a protected party's actual, rather than hypothetical, location.  Of course, the remain-away standard also focuses on whether a defendant was sufficiently close that he would have been able to harass or abuse a protected party entering or leaving the property, regardless of whether or how the protected party was actually doing so at the time.  We also note that our discussion above does not focus on whether the defendant's conduct "intrud[ed] directly into" the Smiths' residence within the meaning of Habenstreit, 57 Mass. App. Ct. at 787.  The Commonwealth did not pursue any such theory at trial, and we do not decide whether an instruction on this aspect of a remain-away violation would have been warranted.

cause.[8]  See generally Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002).  "[A] motion to dismiss a complaint is decided from the four corners of the complaint application, without evidentiary hearing" (quotation omitted).  Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013).  Probable cause requires "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982), quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972) (probable cause standard for indictment).  See DiBennadetto, supra.

Here, the defendant's motion argued that the remain-away provision could be violated only by his actually going onto the Smiths' property.  We have concluded, however, that a defendant may also violate a remain-away provision by, among other things, coming within sufficient proximity to the property line that he

---

[8] In Commonwealth v. Huggins, 84 Mass. App. Ct. 107 (2013), we said:  "Because the defendant went to trial and was found guilty, there is no basis for a claim of prejudice resulting from a pretrial determination of probable cause."  Id. at 109-110, citing Commonwealth v. Greenwood, 78 Mass. App. Ct. 611, 622, cert. denied, 565 U.S. 913 (2011).  The claim in Huggins was that the police lacked probable cause to arrest the defendant because they improperly relied on certain evidence in concluding that he was intoxicated.  Huggins, 84 Mass. App. Ct. at 109.  Huggins does not hold that a conviction precludes review of the denial of a motion to dismiss a complaint for lack of probable cause where the defendant asserts that the denial was premised on an incorrect legal standard for determining whether certain conduct was (or was probably) criminal.

would be able to abuse or harass a protected person if that person were on the property or entering or leaving it.  The arresting officer here, in reports attached to the complaint application, stated in pertinent part that he had observed the defendant "walking away from" the Smiths' address, and that the defendant was "two houses down (well within 100 [yards] of)" that address "when [the defendant] violated the orders."[9]  This was sufficient to establish probable cause.

Conclusion.  The judgments are reversed, the verdicts are set aside, and the case is remanded for further proceedings.

So ordered.

---

[9] The complaint application did not mention the Smiths' statements about where they had seen the defendant, or the arresting officer's statement that he saw the defendant standing in front of the house.  That evidence emerged only at trial.